# WHEELING.

## MILLER *v.* MILLER.

Submitted January 24, 1884.—Decided March 28, 1885.

| 25 | 495 |
| 42 | 519 |
| 25 | 495 |
| 44 | 195 |
| 25 | 495 |
| 54 | 562 |

1. As a general rule equity has no jurisdiction, when there is a plain adequate and complete remedy at law.   (p. 503.)

2. As a general rule, where a court of law has taken jurisdiction of a legal claim, and the defendant has a claim for a balance, which he alleges to be due him from the plaintiff on the settlement of accounts, which can only be settled in a court of equity, as a partnership-account or the account of a personal representative of a decedent, a court of equity will not suspend the course of legal proceedings by injunction for the purpose of enabling the defendant in the common law suit to have these accounts settled in equity and the balance, which he claims, ascertained and allowed as an offset against the plaintiff's demand in a suit at law. (p 504.)

3. When a defendant in an action at law files a bill to make his defense in equity and asks for a stay of proceedings in the law-court, it is a matter within the discretion of the chancellor in granting the injunction, whether he will or will not require a confession of judgment in the action at law.   (p. 509.)

4. In such a case, if a confession of judgment in the action at law is required, the order should require the judgment to be taken " to be dealt with as the court shall direct."   (p.510.)

5. Though the order requiring the confessing of the judgment is absolute as a condition, on which the injunction-order shall take effect, and the court afterwards on the hearing or on a motion to dissolve the injunction is of opinion, that the plaintiff's defense to the action is legal, and that a court of equity has no jurisdiction to interpose by injunction, still the court ought not to dissolve the injunction or dismiss the bill, until the plaintiff at law has caused the judgment at law, which he has obtained, to be set aside, and the common law case reinstated, as it was, when the injunction was granted, and the setting aside of this judgment and this reinstatement of the common law case on the docket should be ordered by the chancery court.   (p. 510.)

Statement by GREEN, JUDGE:

In 1878, George F. Miller, Sr., executor of the last will and testament of Christian S. Miller, brought an action of debt in the circuit court of Cabell county against John G. Miller on three notes of $5,000.00 each all dated July 6, 1872, and payable in six, twelve and eighteen months from date to C.

S. Miller. The declaration was filed, and a demurrer to it was overruled, and thereupon the defendant pleaded *nil debet* set-off and payment, on all of which pleas issues were joined. With their pleas the following specifications were filed:

"G. F. Miller, Ex'or of C. S. Miller, dec'd,

"*To John G. Miller*,     Dr.

| | | |
|---|---:|---:|
| "To the sum of $2,500.00, with interest thereon from the 11th day of June, 1874, the day of the death of the said C. S. Miller, which the said C. S. Miller in his lifetime agreed should be deducted from the debt in the plaintiff's declaration mentioned by a contract in writing made and signed by the said C. S. Miller in his lifetime and by the defendant on the 6th day of July, 1872, and bearing date the day last named, which contract is in substance as follows, to-wit: (See Exhibit "A"............ .... .. ...................... ........ | $ 2,500 | 00 |
| "To sundry goods, wares and merchandise furnished by defendant to the said C. S. Miller from November 6, 1872, to June 14, 1874, inclusive, an itemized statement whereof is here filed marked "B."................... | 146 | 42 |
| "To sundry goods, wares and merchandise furnished by defendant to George F. Miller, one of the legatees of C. S. Miller, deceased, on account of his legacy from October 2, 1874, to March 1, 1879, an itemized statement whereof is here filed marked "C."................ .. | 303 | 47 |
| "To boarding and lodging C. S. Miller, deceased, and taking care of him from July 6, 1872, to June 11, 1874 . | 750 | 00 |
| Sept. 7, 1874, to amount paid you .......... ...... .... | 752 | 53 |
| Mar. 25, 1875, "    "    "    " ...... ........... ....... | 100 | 00 |
| Apr. 12, 1875, "    "    "    " ............ ... .............. | 147 | 95 |
| Oct. 30, 1875, "    "    "    " ...... . ........... ...... | 228 | 40 |
| Dec. 21, 1875, "    "    "    " .................... ... | 383 | 13 |
| Apr. 12, 1876, "    "    "    " ............ ...... .... ... | 500 | 00 |
| May 12, 1876, "    "    "    " ... ....... .... .. ... | 41 | 48 |
| June 14, 1876, "    "    "    " ....  .    .. .. | 3,344 | 31 |
| July 5, 1876, "    "    "    " ................... .... . | 100 | 00 |
| Jan. 29, 1877, "    "    "    " . ............ .. .. .... | 100 | 00 |
| Apr. 9, 1877, "    "    "    " ......... ..    .. .. | 350 | 00 |
| "April 1877, to note to Mrs. Hannah Keller on account of her legacy as devisee of C. S. Miller and subsequently paid, which payment you approved ......... ........ | 950 | 00" |

"SPECIFICATIONS OF PAYMENTS.

"G. F. Miller, executor of C. S. Miller, dec'd,    ⎫

            *vs.*                       ⎬ In debt.

   John G. Miller.              ⎭

"In the Circuit Court of Cabell County.

"The plaintiff in the above action is hereby notified that

the defendant will upon the trial thereof prove and rely upon the following account and specifications of payments made upon the debt in the declaration mentioned under the plea of payments filed in said cause, to-wit:

"June 11, 1874, amount due by contract in writing, bearing date July 6, 1872, between C. S. Miller, deceased, and the plaintiff, herewith filed marked "A."

"An account for sundry goods, wares and merchandise furnished by defendant to the said C. S. Miller in his lifetime, from November 6th, 1872, to June 14, 1874, inclusive an itemized statement whereof is herewith filed marked . "B."

"A payment made to George F. Miller executor of the said C. S. Miller on the bequest made to said George F. Miller by said C. S. Miller in his last will, by sundry goods, wares and merchandise furnished by defendant to the said George F. Miller from October 2, 1876, to March 18, 1879, inclusive, an itemized statement whereof is here exhibited marked "C."

| | |
|---|---|
| "To boarding, lodging and taking care of the said C. S. Miller, deceased, from July 6, 1872, to June 11, 1874... | $ 900 00 |
| Sept. 7, 1874, to amount paid you...... ......... ... .. | 752 56 |
| Mar. 25, 1875, "   "    "   " . ... ...... ......... | 100 00 |
| Apr. 12, 1876, "   "    "   " .. ................... ... | 147 95 |
| Oct. 30, 1875, "   "    "   " .. ...... ... ...... ... | 228 40 |
| Dec. 21, 1875, ".   "    "   " ... ...... .. ... ...... .. | 383 13 |
| Apr. 12, 1876, "   "    "   " ...... . ... .. . | 500 00 |
| May 12, 1876, "   "    "   " .  . .... ... .. | 41 48 |
| June 14, 1876, "   "    "   " .. .... . .. . .... | 3,444 31 |
| July 5, 1876, "   "    "   " .  .. .... .. . ... | 100 00 |
| Jan. 29, 1877, "   "    "   " .. . ...... . .. .... | 100 00 |
| Apr. 9, 1877, "   "    "   .. ...... . . | 350 00 |
| April, 1877, to note to Mrs. Hannah Keller on account of legacy as devisee of C. S. Miller, and subsequently paid by me, which payment you approved | 950 00" |

The following is a copy of exhibit "A" referred to in these specifications, of payment to set-off:

"It is understood and agreed by and between C. S. Miller and John G. Miller, that if John G. Miller should out-live C. S. Miller, then he, the said John G. Miller, is to have and receive from the estate of the said C. S. Miller the sum of $2,500.00 more than G. F. Miller and Christina R. Bussey, and the said sum is to be deducted from the $15,000.00

this day secured to said C. S. Miller by said John G. Miller, in consideration of a general release and assignment and settlement this day made by said C. S. Miller to said John G. Miller.

"Given under our hands this 6th day of July, 1872.

"JOHN G. MILLER,
"C. S. MILLER."

Exhibits B. and C. need not be copied. This being all the action, which had been taken in this common-law suit, John G. Miller at April rules, 1879, filed his bill of injunction in the circuit court of Cabell to restrain George F. Miller, executor, from further prosecuting his action, at least till the further order of the court, and for other relief. This bill sets out the execution of these three notes by the plaintiff and their consideration, which was a valuable and sufficient one, being a purchase of nearly all of the property of C. S. Miller, real and personal, and the execution at the same time of the above exhibit "A" by John Miller and Christian S. Miller. The plaintiff avers, speaking of the property for which he gave those three notes of $5,000.00 each, "that he bought said property from said C. S. Miller and executed the three notes aforesaid upon the express condition and stipulation, that the said C. S. Miller should give him the written contract and agreement marked "A," and upon the express condition and stipulation, that if he, the plaintiff, should outlive C. S. Miller, the sum of $2,500.00 should be deducted and abated from the purchase-money aforesaid. The deed for the property purchased, said contract "A" and said three notes were all executed and delivered at the same time, and were all one and the same contract and formed but a simple transaction."

The plaintiff therein alleges that the real interest of said C. S. Miller was that as expressed in contract "A", the plaintiff was entitled to have of his estate as much as G. F. Miller and Christina R. Bussey together, and $2,500.00 in addition thereto, if plaintiff out-lived C. S. Miller, to be in such contingency deducted from those three notes. But the plaintiff does not claim that this was the real intent of C. S. Miller and of the plaintiff, when this contract was made, but only that the plaintiff should have from the estate of C. S.

Miller in case he out-lived him, $2,500.00 more than *either* said Christina R. Bussey or George F. Miller, which sum of $2,500.00 should in that event be deducted from the purchase-money represented by those three notes, said C. S. Miller then intending to divide his estate equally between George F. Miller and Christina R. Bussey, who was his sister, and the plaintiff. But he afterwards, on April 5, 1873, made a somewhat different disposition of his property by his will then written, giving to Christina R. Bussey $5,000.00, to another sister Hannah Keller $2,000.00, and to his two brothers John G. Miller, the plaintiff, and George F. Miller he gave the residue of his estate. His whole estate was about $18,000.00, and he owed no debts except to the plaintiff. This will was proven and George F. Miller qualified as executor of C. S. Miller, who died June 11, 1874; but as such executor he has not settled his accounts.

The plaintiff claims, that, while by the terms of their contract he is entitled to have ·of the estate of C. S. Miller as much, as he devised to Christina R. Bussey, $5,000.00, and also $2,500.00 in addition to be deducted from those three notes, which had been agreed upon, yet he only insists upon the $2,500.00 abatement from those notes, and then that the estate should be distributed according to the will. He claims the two offsets also to these three notes, claimed in his specifications in the common law suit, and also the same claim set up with this common law suit, for boarding and lodging C. F. Miller. He claims also, that he had made all the payments set up as payments by him in the common law suit. The bill alleges, that the legacies of $5,000.00 and $2,000.00 to the sisters of C. S. Miller have been fully paid; and he claims as an offset to his three notes $303.47 goods sold to George F. Miller as claimed in the common law suit, which George F. Miller had agreed to credit on those notes. The prayer of the bill is as follows :

"The plaintiff is without remedy, except in a court of equity, and inasmuch as he cannot make a complete defense at law to said suit brought against him by said executor and set off against the plaintiff's claim in said suit all the just and equitable sets-off to which in equity he is rightfully entitled, he prays that the parties named as defendants to this bill;

that the said George F. Miller, as executor, may be com-
pelled to settle his accounts as executor of the estate of C.
S. Miller, deceased, and to credit plaintiff with one-half of all
the assets in his hands belonging to said estate on the notes
aforesaid, and also to credit said notes with one-half of any
balance due thereon, if any balance shall be, and to allow
and receive all the other just and proper credits on said notes
to which the plaintiff is entitled as hereinbefore set forth,
and that in the meantime the said George F. Miller, executor
as aforesaid, may be restrained, inhibited and enjoined from
the further prosecution of said action at law until the fur-
ther order of the court; and for all such other, further and
general relief as to the court may seem meet and proper and
the circumstances of the plaintiff's case may require."

The defendants to this bill were George F. Miller in his
own right and as executor of C. S. Miller deceased, Christina
R. Bussy and Hannah Keller. George F. Miller filed an an-
swer denying most of the allegations in the bill and praying
a dissolution of the injunction awarded, to which there was a
general replication. Numerous depositions were taken. The
questions in controversy were, whether this paper "A" was a
forgery, and if not, whether it was not obtained when C. S.
Miller was incapable of understanding what he did, being
very drunk; and whether it was a contract or a testamentary
paper; also, whether John G. Miller should receive any com-
pensation for the board of C. S. Miller? On August 3, 1872,
the judge of the circuit court of Greenbrier, to which this
chancery cause had been removed, decided, that " John G.
Miller, who claims to take under the will, is not entitled to
take anything by way of credit, set-off, claim, counter-claim,
or in any other way from the estate of C. S. Miller deceased,
by reason or in virtue of the paper writing dated July 6,
1872, marked "A." The judge then referred the cause to a
commissioner to settle the accounts of George F. Miller, ex-
ecutor of C. S. Miller; to settle what was due from John G.
Miller on these three notes after deducting all legal and
proper payments and offsets, including payments made to the
legatees of C. S. Miller, and to render an account showing
what, if anything, is now due to these legatees. The com-
missioner made and filed his report, in which he did not allow

John G. Miller anything for boarding C. S. Miller. The plaintiff filed certain exceptions to this report, which by the decree of November 14, 1882, were overruled and the decree then proceeds as follows:

"And now this cause came on this day to be heard upon the plaintiff's bill and exhibits, the answer of the defendant George F. Miller, in his own right and as executor of the last will and testament of C. S. Miller, deceased, and exhibits, and the plaintiff's replication thereto, and upon the orders, decrees and proceedings heretofore made and had in the cause, including the decree aforesaid made in vacation herein, the depositions taken in the cause, the bill taken for confessed as to the defendants Hannah Keller and Christina R. Bussey, and upon the report aforesaid, and the evidence returned therewith, and was argued by counsel. And the court having maturely considered all the questions arising in the cause, doth adjudge, order and decree as follows:

"First. That the plaintiff, who claims to take under the will of C. S. Miller, deceased, a copy of which will is filed as an exhibit in this cause, is not entitled to take anything by way of credit, sets-off, claim, counter-claim, or in any other way from the estate of C. S. Miller, deceased, by reason or in virtue of the paper writing, bearing date the 6th day of July, 1872, purporting to have been signed by John G. Miller and C. S. Miller, and filed by the plaintiff as an exhibit marked "A" with his bill.

"Second. That the said report of commissioner Harvey, as hereinbefore corrected by allowing the plaintiff's exception thereto as to the alternative method of applying the payment of the plaintiff on the notes in question in this suit, be and the same is in all other respects hereby approved and confirmed.

"Third. And it appearing to the court from said report as corrected, that there was due from the plaintiff John G. Miller to the estate of C. S. Miller, deceased, upon the said notes in question in this suit on the 9th day of November, 1882, the sum of $14,318.55 (fourteen thousand three hundred and eighteen dollars and fifty-five cents,) including principal and interest to that day, after deducting all payments, credits and sets-off to which the said plaintiff is in any way entitled on

and against the said notes; and it further appearing by said report as confirmed, that of the sum so due and owing by the said plaintiff on the said notes, he is entitled as residuary legatee in the will hereinbefore named, as the matters pertaining to the estate of said C. S. Miller, deceased, now stand, to the sum of $7,573.10 (seven thousand five hundred and seventy-three dollars and ten cents,) it is therefore adjudged, ordered and decreed that the said plaintiff John G. Miller do pay to the defendant George F. Miller, as executor as aforesaid, the residue of the said sum of $14,318.55, amounting, after deducting the said sum of $7,573.10 which the said John G. Miller is allowed for the present to retain, to the sum of $6,745.45, with interest thereon from this day till paid, but inasmuch as the estate of said C. S. Miller, deceased, may not as yet have been fully administered, and as the plaintiff desires to appeal from this decree, a final decree as to the distribution of the residue, if any, of said estate and as to the costs of this suit is not now made. On motion of the plaintiff, the operation of this decree is suspended for sixty days to enable him to apply for an appeal therefrom to the Supreme Court of Appeals, the defendant George F. Miller waiving the bond required by the statute."

From this decree an appeal has been taken by John G. Miller.

*Knight & Couch* for appellant.

*J. H. Ferguson* for appellees.

GREEN, JUDGE:

This case was decided by the circuit court on its merits; but before we can consider its merits, we must be satisfied, that the bill on its face sets out a case, which a court of equity can entertain. If it does not, all that the court can do is to dismiss the bill, unless on the facts proven in the cause it appears, that, though the bill may be fatally defective, yet it might be so amended, as that a case might be set out in it, such as would give a court of equity jurisdiction. It is true, that the bill was not demurred to, and the question, whether a court of equity had jurisdiction, does not seem to have been raised or acted upon by the circuit court. All parties

therein appear to have assumed, that a court of equity had jurisdiction of the case.    Nor have the counsel in this Court in their argument raised any question as to the jurisdiction of a court of equity in this case but have discussed it only on its merits.    But it is clearly law, that if a court of equity has no jurisdiction, and this is apparent on the face of the bill, the Court must dismiss the bill at the hearing (unless from the record it may appear probable, that a case, in which a court of equity would have jurisdiction could be stated by a legitimate amendment of the bill, when it should be allowed).    If the Court fails to dismiss the bill, the appellate court must dismiss it; for no other decree can be rendered, when it is apparent that the court had no jurisdiction of the case, and no legitimate amendment of the bill could give it jurisdiction. (*Stuart's heirs* v. *Coalter*, Judge Carr's opinion, 4 Rand. 78; *Coleman's heirs* v. *Anderson*, 29 Grat. 430, Judge Anderson's opinion, p. 430; *Thompson* v. *Railroad Companies*, Justice Daniel's opinion, 6 Wall. p. 137.)

It is settled, that a court of equity generally can grant no relief, when there is a plain, adequate and complete remedy at law.    (*Morrison* v. *Speer*, 10 Grat. 228; *Franks* v. *Cravens et al*, 6 W. Va. Syl. 2, p. 186.)    But courts of equity have sometimes entertained jurisdiction, when the legal remedy was doubtful or partial.    (*Wampler* v. *Wampler*, 30 Grat. 454, *Morrison's Ex'or* v. *Lewis, Ex'or*, Judge Christian's opinion, p. 678.)    In the application of these general principles it may be regarded as settled, that an injunction may be granted before judgment, when the cause depends upon questions, which are solely cognizable in equity and cannot be appropriately considered or determined at law.    (*Frith* v. *Roe*, 23 Ga. 139; *Pollock, administrator, &c.* v. *Gilbert, executor, &c.* 16 Ga. 399, point 8 of the syllabus.)    And even when there is involved in the common law suit nothing but a legal demand, if numerous suits were brought by the same person involving the same question, an injunction might be granted to the prosecution of all but one of them, until it could be heard and determined and the principles involved in them all then settled.    (*Third Avenue Railroad Company* v. *Mayor, &c.*, 54 N. Y. 159.)    So an injunction will be granted to prevent the enforcement of a legal right in a suit of law, if the as-

sumption of this equitable jurisdiction is necessary to avoid a multiplicity of suits. (*Oelrich* v. *Spair*, 18 Wall. 211, 218.)

There are exceptions to the general rule, that equity can grant no relief, when there is a plain, adequate and complete remedy at law. In carrying out these general principles, which we have laid down, a court of equity ought not except for some special reasons and under peculiar circumstances to suspend the course of legal proceedings by injunction for the purpose of enabling a defendant in a suit at law to setoff a balance alleged to be due him, if a settlement should be had with the plaintiff of an account in matters, which can only be settled in a court of equity, as a partnership-settlement or a settlement of the accounts of a personal representative of an estate; for though this defence is equitable, yet as the offset claimed constitutes no ascertained or liquidated demand, it is not within the equity, that the doctrine of setoff is intended to promote. (*Preston* v. *Stratton et als, executors of Stratton,* 1 Ans. 50; *Robinson* v. *Wheeler'e administrator,* 51 N. H. 338; *Cummings* v. *Morris,* 25 N. Y. 625; *Ranson* v. *Samuel,* 1 Craig and Philips 171; *Duncan* v. *Lyon,* 3 John. Chy. 351; *Mead* v. *Merrett,* 2 Paige, 403; and *Hewitt* v. *Rhul,* 10 C. E. Green 24.).

It remains now to apply these principles to the case before us. And first with reference to all the claims, which the defendant set up in the action at law as payments or sets-off, it is obvious, that they are all legal demands and could as well have been acted upon and decided in that suit by a jury under the instructions of the court, and even far better than they can by a court of equity. The first of these is the claim of the defendant to a credit by reason of the paper, which he claims is a contract between John G. Miller and C. S. Miller, the testator of the plaintiff, dated July 6, 1872, the same date as that of the three notes sued upon in the common law suit. This paper has been set out in the statement of the case as paper "A." And the defendant claims that by it the testator C S. Miller agreed in his lifetime and as a part of the contract, under which the defendant executed to him the three notes, that a certain amount should be deducted from them or allowed as a credit on them after the death of C. S. Miller, which amount in the common law suit is claimed as

a credit on them or as a set-off to them as of date June 11, 1874, the date of the death of C. S. Miller. And precisely the same claim is set up in the present chancery suit. Is there any reason why the judge in the trial of the common law suit can not just as well construe this paper, as the chancellor can in the suit in equity? Or is there any reason why the jury can not as well determine in the common law suit, whether it is a forgery or was obtained by gross fraud from C. S. Miller, when he was too drunk to know what he had signed, as the chancellor can decide these questions in a court of equity? The two last questions it seems to me are so appropriately tried by a jury, that had they arisen in a chancery suit they would have been referred to a jury on an issue out of chancery for their decision rather than referred to a commissioner, or by the chancellor, if there was great conflict evidence; the next payment or offset claimed is a mercantile account by the defendant against C. S. Miller for $146.42. There can be no question but that this claim is a purely legal demand; and there can be no reason assigned for transferring the decision of it to a court of equity. The same may be said of the next item claimed by the defendant as $303.47, goods furnished the plaintiff, which he agreed should be a credit on the notes sued upon. The next item $750.00 for board of the testator, C. S. Miller, is of the same character. There is no assignable reason, why the amount and justice of these claims may not be as well and even better determined by a jury under the instructions of the court as by a chancellor in a court of equity. They were all purely legal demands, and the common law suit furnished the defendant in it a plain, adequate and complete remedy; and there was no conceivable reason why a court of equity by an injunction to prevent the prosecution of this common law suit should have withdrawn the decisions of these legal questions from the common law courts, in which a suit was pending, in which they must have been promptly decided without inconvenience.

The only other claim set up by the defendant is, that he had made certain specified payments on the notes sued upon, which payments were all made to the plaintiff in the common law court directly, except one which at his request was made

Mrs. Hannah Keller, legatee under the will of C. S. Miller the testator.   These same claims of payments are set up in the chancery suit and of course could have been appropriately decided in the common law suit.   The only other claim set up in this chancery suit other than these purely legal claims, which could have been much more appropriately settled in the common law suit, was, that the defendant and the plaintiff in their individual capacity were the residuary legatees of the testator, and the defendant had a right to claim as an equitable offset against the demand of the plaintiff as executor in the common law suit the amount, which would ultimately come to him from the estate of the testator as one of the residuary legatees, which could be only ascertained in a suit in equity after the settlement of the executorial accounts of the plaintiff.   We have seen that a court of equity will not except under peculiar circumstances suspend the course of legal proceedings for the purpose of enabling a defendant in an action at law to set off a balance, which might be due him in a settlement with the plaintiff, which can only be had in a court of equity, as such balance does not constitute an ascertained or liquidated demand and is therefore not within the equity, which the doctrine of sets-off is intended to promote.

There are no peculiar circumstances appearing on the face of this bill or in the evidence in the chancery suit, which tend even to justify a court of equity to suspend the course of legal proceedings in the common law suit.   On the contrary there is much in the bill in this cause, which, it seems to me, renders it peculiarly improper for the court of equity to interfere to prevent the prosecution of this common law suit.

In the first place it appears from the allegations in the bill, that more than five sixths of the estate of the testator in the hands of his executor consisted of the three notes, which he was endeavoring to collect in this common law suit; that the specific legatees had been paid off; that the testator at the time of his death owed no debts.   From these statements it is obvious, that the settlement of the executorial accounts of the executor of C. S. Miller involved very little trouble, and that such settlement could promptly be made by the executor, as soon as this common law suit, which he brought against John S. Miller, the plaintiff in the chancery suit, should be

decided, and till the controversy between the executor of C. S. Miller and George F. Miller was decided, there could be no settlement of the estate of C. S. Miller and no ascertainment of the amount coming to George F. Miller, the plaintiff, as one of the residuary legatees of C. S. Miller. The bill says that "it is unconscionable, inequitable and unjust for said executor to recover a judgment against him and to harass him with a writ of *fieri facias* and compel him to pay such judgment, until he has given the plaintiff credit on his said notes for the amount he is entitled to as residuary legatee." These fears, it seems to me, were very idle, if they were really entertained by the plaintiff; for from his own statements in the bill it is obvious, that, as soon as the executor should obtain a judgment against him, he would know with great accuracy how much would be coming to him as residuary legatee, and if he did right, which there is no reason to believe he would not, he would at once have settled with him and credited the execution issued on the judgment with the amount coming to him, the defendant in the execution, as a residuary legatee of C. S. Miller. If he should refuse to do so, it would then be time for him to file his bill of injunction claiming that this equitable offset should be credited on the execution. But this remote and possible injustice could certainly be no just reason for transferring to a court of equity the trial of claims, a suit to settle which was then pending in a common law court, which could afford a plain, adequate and complete remedy for all his demands and claims.

It might be suggested that the common law court could not determine the amount of the credit to be given George F. Miller, if any, by reason of this paper "A" set out in the statement of the case. If this was a testamentary paper and should be so held by the judge presiding at the trial of the common law suit, of course G. F. Miller would be entitled to no credit by reason of it. If it should be held to be a contract, then the amount of the credit he is entitled to by reason of the contract can in no manner depend on the settlement of the estate of C. S. Miller; for the amount, which is to be credited on the notes of John F. Miller, if this be a contract, must necessarily be a sum certain or capable of be-

ing made certain, and could not possibly be dependent on the will of the other contracting party. For a contract to give a credit for an amount, which shall depend upon what I may choose hereafter to insert in my will, is clearly no contract. As a contract it would be void for uncertainty in its most material provision the amount to be credited. This seems to have been clearly the understanding of John G. Miller; for both in the common law suit and in the chancery suit he distinctly claims by reason of this contract, as he calls it, marked "A," that he is entitled to a credit of a definite sum $2,500.00; and it is obvious he is entitled to a credit of that amount, as claimed by him in the common law suit and in the chancery suit, or he is entitled to nothing. It is true, he claims, that by a construction of this paper he might be entitled to a much larger amount, that is to $2,500.00 more than G. F. Miller and Christina R. Bussey, and as Christina R. Bussey alone received $5,000.00 he was by this paper "A" entitled to a credit of at least $7,500.00. But he does not insist in his bill on such a credit, but only on a credit of $2,500.00; and this he is driven to, because if he were really entitled by the true construction of this paper to at least $7,500.00 made up by adding to the $2,500.00 the $5,000.00 bequeathed by the will of C. S. Miller to his sister Christina R. Bussey, then this paper would be a testamentary paper, and being revoked by the subsequent will of C. S. Miller, John G. Miller would be entitled to no credit on his three notes by reason of it.

As therefore he was entitled by reason of this paper to a credit of either $2,500.00 on his notes or to no credit at all according to the construction, which may be given it by the court, this offset or credit claimed by the defendant was strictly a legal credit, if it was a credit at all. My conclusion therefore is, that a court of equity ought not to have entertained jurisdiction in this cause and ought to have awarded no injunction.

It remains then only to determine what decree this Court should enter in this cause. It is obvious, that the decrees of the circuit court of Greenbrier should be reversed, as they have decided on the merits of the case; but that the appellants must pay the appellee their costs in this Court ex-

pended as the parties substantially prevailing. And this cause must be remanded to the circuit court of Greenbrier to be further proceeded with; for great injustice might be done, as we will presently see, if the bill was now dismissed. The instructions to be given to the circuit court in its further proceedings in this cause remain to be considered.

The record before us is, I suppose, the whole record that was before the circuit court of Greenbrier; but, I presume, it is not the entire record in this cause. I assume, that an injunction was awarded, because the procuring of it was the main object of the bill, and it prays, "that George F. Miller, executor of C. S. Miller may be enjoined from the further prosecution of said action at law;" and the answer of George F. Miller executor of C. S. Miller prays, "that the injunction awarded in this cause be dissolved and the plaintiff's bill dismissed with costs." I infer therefore that an injunction was awarded as prayed for in the bill. But from the copy of the record from Greenbrier circuit court before us it appears, that the clerk of the circuit court of Cabell county, where this suit was, when this cause was transferred to the circuit court of Greenbrier, failed to send with the papers the order of injunction awarded by the circuit court of Cabell county or by some judge in vacation. I presume, that the injunction prayed for in the bill was not probably granted without any condition. Where an injunction is granted to proceedings in a common law suit at the instance of the defendant, it generally, as the court or judge has a right to do in the exercise of a proper discretion, puts the plaintiff before giving him the benefit of the injunction upon terms of confessing judgment at law. I presume, that this was probably not done in this case, as it would not have been proper for the court to do so in such a case as this, if it awarded an injunction. But as we cannot know certainly, whether it did so or not, as the injunction-order is not before us, and as we could not get it before us by *certiorari*, as it in all probability never was before the circuit court of Greenbrier, to the clerk of which court our *certiorari* would be addressed, it becomes necessary for us to provide in our decree for such a contingency.

As this Court has concluded, that the injunction should be dissolved, if one was awarded, and the bill dismissed without

giving any consideration to the merits of the defendant's claims, and if he has been put upon terms of confessing a judgment at law, when the injunction was awarded, and has done so, there will be against him a very large judgment without any pretence of trial in either the common law court or in the chancery court; for the trial he has had in the chancery court will be set aside and declared null and void by our decree.

In such a case as this it was decided in the *Great Falls Company* v. *Henry's Administrator*, 25 Grat. 575: 1. "When a defendant in an action at law files a bill to make his defense in equity and asks a stay of proceedings in a law court, it is a matter of discretion in the chancellor, in granting the injunction, whether he will or will not require a confession of judgment in the action at law. 2. In such case if a confession of judgment in the action at law is required the order should require the judgment to be dealt with as the court shall direct. 3. Though the order requiring the confession of judgment is absolute, yet if the court dissolves the injunction and dismisses the bill on the ground that the plaintiff's defense to the action is legal, and the court of equity has no jurisdiction the decree should direct that the judgment at law should be set aside, and the case reinstated as it was when the injunction was granted, and if this is not done the chancery court will on motion afterwards made, direct the judgment to be set aside." The cases cited to sustain these conclusions are *Warwick* v. *Norvell, &c.*, 1 Rob. R. p. 308 and *Hooper* v. *Cooke*, Jurist (1856) part 1, p. 527 (No. 75 Vol. 2 N. S.) See also *Knott* v. *Seamands, supra*, point 3 of the syllabus. In the Virginia case (25 Grat. p. 575) the court of chancery had by a final decree dismissed the plaintiff's bill and dissolved the injunction, which had been awarded by a final decree. In the appellate court "it was objected, that the judgment confessed at law under the order of the equity court is a matter of law and fact, a final judgment of another tribunal, and the case presented in the bill being one of which the court had no jurisdiction, it could not entertain it even for the purpose of correcting its own wrong in requiring an absolute confession of judgment by the plaintiff and of putting the parties *in statu quo*;" 25 Grat. p. 282. The court in

answer to this say p. 282: "We should be very unwilling to be forced to such a conclusion even by direct and pertinent authority to sustain it and with none to oppose it; but fortunately for the ends of justice the very reverse has been decided by the English court of chancery."     See *Hooper* v. *Cooke*, Jurist (1856) part 1, p. 527 (No. 75 Vol. 2 N. S.) That case is there reviewed, and on the strength of it the conclusions we have stated were reached.    See pages 582–583.

The position of our case does not make it quite as difficult to reach the ends of justice to the defendant; in that case the circuit court had entered a final decree in the chancery cause, which it has not done in this cause; and we can remand the cause to the circuit court of Greenbrier county and direct it not to dismiss the bill at the plaintiff's costs or to dissolve the injunction which has been awarded, if in point of of fact the injunction has been awarded, until George F. Miller, Sr., executor of the last will and testament of Christian S. Miller, shall have withdrawn or caused to be set aside any judgments he may have obtained by confession or otherwise in the common law suit of George F. Miller, Sr., executor of the last will and testament of Christian S. Miller *vs.* John G. Miller, pending, or lately pending in the circuit court of Cabell county, referred to in the bill in this cause, and until he shall have reinstated on the docket said common law case, to be tried at law on the issues now in that case or in such other proper issues, as may hereafter be made up, and its order in this matter shall be enforced by any proper proceeding, if it should not be obeyed by the parties.    In order to carry out these directions the circuit court of Greenbrier shall obtain a completed copy of the record of this cause, so far as proceedings were had therein in the circuit court of Cabell, including the order of injunction, if one was granted, or, if it deems it more proper in order to have the views we have expressed and the directions we have given carried out, it may transfer this cause to the circuit court of Cabell county to be there proceeded with; and this decree and opinion should be certified to the circuit court of Greenbrier county and by it to the circuit court of Cabell county.

REVERSED.   REMANDED.