Z. G. Bunch *v.* B. L. Potter, *etc.*

(No. 9197)

Submitted September 4, 1941. Decided October 14, 1941.

*Wilbur C. Perry, Samuel Biern* and *Leo Loeb,* for plaintiff in error.

*Duncan W. Daugherty,* for defendant in error.

LOVINS, JUDGE:

Z. G. Bunch brought an action of assumpsit in the Circuit Court of Cabell County against B. L. Potter, trading and doing business as Potter Nurseries, based upon a written contract which provided for the loading and hauling of topsoil by Bunch as subcontractor on certain Government Housing Projects, defendant being the general contractor for the landscaping thereof.. The general issue was joined upon defendant's plea of non-assumpsit, and the case was tried before a jury. At the conclusion of all evidence, upon plaintiff's motion, the trial court directed a verdict for the plaintiff below and submitted to the jury the sole question of quantum of damages. Judgment was entered upon the jury verdict which assessed damages in the amount of $1,200.00.

From the evidence adduced, it appears that an agreement was entered into on the 15th day of February, 1940, by which Bunch was to furnish labor, materials and apparatus necessary for "loading, hauling all topsoil involved in fully developing the project sites in accordance with the drawings and the Specifications, especially Division No. 26 'Landscape Work', of the Specifications". Article 2 of the contract provided that Bunch "shall start work immediately when notified by the Contractor and deliver topsoil as required by the Contractor when notified by the Contractor that his work may be installed." Included among the other provisions were those relating to the payment of seventy cents per compacted cubic yard delivered to the project sites and the points of delivery, designated as Huntington Housing Project W. Va. 4-1, 4-2 and 4-3. About two weeks after the execution of this agreement, "Addendum No. 1" was added thereto, as follows: "Article 6. It is further agreed that the topsoil is to be removed from the Paul Turman farm, tract known as the Kyle Farm at the intersection of the Ohio River Road and Little Seven Mile Road. Should this soil at above location become exhausted or rejected by the Local Authority said Subcontractor agrees to haul the above mentioned topsoil from any other location of the

Paul Turman property at the above contracted price." Bunch testified that on or about February 25, 1940, Potter told him to move his equipment to the Turman farm and that on the following day he did so, moving a 12-ton gas shovel and about twelve trucks to the farm. He further testified that during the next four or five months he asked Potter several times when the work of removing topsoil was to begin without receiving any definite answer, that he turned down other contracts for hauling during that time, and that finally, in the latter part of July, 1940, Potter told him the topsoil from the Turman farm was not to be used, suggesting that they tear up their contract and make a new one for the removal of topsoil from another farm, the Peck farm. This, Bunch refused to do, relying upon the agreement of February 15, 1940, as establishing his right to haul all topsoil to be used on the Housing Projects. Plaintiff's evidence also shows that in the July conversation, Potter stated that the contract was "null and void because of the fact that the Government rejected this dirt—the dirt that was specified in the contract". Paul Turman, the owner of the land from which the top-soil was to be taken, testified that in January, 1940, he and Potter contracted for the removal of topsoil from his farm, and that he was the owner of approximately one hundred thirty-four acres of river bottom land and some hill land, near the Kyle farm. It is shown that the profit on the hauling of topsoil at seventy cents per compacted cubic yard from the location of the Turman farm to the Housing Projects is about twenty-five cents per cubic yard and that at the time of the trial, Potter had used about six thousand cubic yards on the projects, none of which was hauled by Bunch.

Potter denied that he had requested Bunch to move his equipment to the Turman farm; he stated that such a request was not made because any topsoil used on the Housing Projects was subject to the approval of the Housing Authority; that the Turman location had never been approved; and that later two samples taken from the Turman farm were rejected. Upon motion of plaintiff below, the jury was directed to disregard "any con-

versation about soil being turned down by the Housing Authority." The testimony of Fred T. Handloser, landscape architect in charge of the Housing Projects, relating to the examination and rejection of the topsoil from the Turman farm, was excluded from the jury's consideration and was vouched on the record.

The record shows that at the time the motion for a directed verdict was sustained, the trial court made this observation: "* * * the court's theory of the case is that the contract gives the plaintiff the right to haul all the topsoil and they have shown they have used up to now six thousand cubic yards of that material * * *." Plaintiff in error contends that the trial court erred in excluding from the jury's consideration the evidence in regard to the rejection of the topsoil from the Turman farm by the Housing Authority, and in construing the contract as hereinbefore indicated, relying upon Article 6 of the Contract to show the intention of the parties thereto that Bunch was "limited to hauling topsoil from the Turman farm and to such topsoil only from that farm as should meet the approval of the Housing Authority". We agree that Bunch was limited to hauling topsoil from the Turman farm, but we do not believe that approval of the Housing Authority was provided for in the manner claimed by plaintiff in error.

Referring again to Article 6, it appears therefrom that the parties to the agreement contemplated that approval of the "Local Authority" was necessary as to topsoil from that part of the Paul Turman farm, "tract known as the Kyle Farm" and that provision was made for hauling "the above mentioned topsoil from any other location of the Paul Turman property" in case the topsoil at the Kyle farm became exhausted or was rejected. "The above mentioned topsoil" unquestionably refers to "all topsoil involved in fully developing the project sites." No qualification appearing as to topsoil from the Turman farm, other than that from the Kyle tract, Potter therefore agreed to employ Bunch as subcontractor for the hauling of all the topsoil necessary for the project sites named

and that such hauling was to be done from the Turman farm.

The essence of plaintiff in error's contention is that the rejection of the topsoil by the Housing Authority constituted an excuse for his non-performance of the agreement with Bunch, however, in order to make such an excuse for non-performance available to Potter in this action, the contingency of such rejection should have been provided for in the contract in general terms instead of being limited to the Kyle tract. Determination of the questions raised in this case is governed, we believe, by the rule announced by this Court in *Roberts* v. *American Column & Lumber Co.,* 76 W. Va. 290, 85 S. E. 535. Therein, the fulfillment of the contract depended upon defendant's acquisition of rights-of-way across lands owned by a third person. The defendant undertook, by the terms of the contract, to acquire these rights-of-way without limitation or qualification. Such rights were never obtained. Defendant claimed that the subsequent impossibility of obtaining the rights-of-way excused the performance of the contract. This Court held: "A contract, without qualification or restriction, by one *sui juris,* to do or perform an act not in itself unlawful, immoral or impossible of performance, casts upon him a duty from the discharge of which he can not excuse himself by reason of the lawful conduct or interference of a stranger to the undertaking. By neglecting to qualify his promise, so as to make such an excuse available, the promisor waives it as a defense against a recovery for non-performance." This holding has been cited with approval in *Holdred Collieries* v. *Coal Corp.,* 97 W. Va. 109, 124 S. E. 493; and *Virginian Export Coal Co.* v. *Land Co.,* 100 W. Va. 559, 131 S. E. 253. See also L. R. A. 1916F, 48; 6 R. C. L. 1014. Point 2 of the syllabus in *Virginian Export Coal Co.* v. *Land Co., supra,* is as follows: "It is the duty of contracting parties to provide against contingencies, as they are presumed to know whether the completion of the duty they undertake be within their power." An analagous factual situation is found in *Standard Oil Co.* v. *Central Dredging Co.,* 225 App. Div. 407, 233 N. Y. S. 279; af-

firmed 252 N. Y. 545, 170 N. E. 137, wherein the dredging company contracted to deposit on plaintiff's premises spoil from a government contract upon which it was working. By the terms of the contract, the dredging company was to "apply for and obtain any necessary permits from * * * federal authorities to complete the said work." Permission to use the government spoil was refused, and the dredging company was held liable in damages for the increased cost of the fill. It was held that "defendant obligated itself that the spoil would be available when its officers knew that permission would have to be obtained, and failure could have been guarded against in the contract."

Applying these principles to the instant case, it will be readily seen that there was nothing unlawful, immoral or inherently impossible within the contemplation of this contract. The parties were capable of entering into a contract and there is no question but that topsoil on the Turman farm was in existence at the time of and after the execution of the contract. The only condition which prevented Potter from carrying out his part of the agreement was the lawful conduct and interference of a third person, not a party to the agreement, and this contingency was not provided for in terms broad enough to cover the entire Turman farm.

In view of the foregoing, we are of the opinion that the trial court did not err in refusing to admit evidence of the Housing Authority's rejection of topsoil from the Turman farm. Upon the showing that defendant in error was ready to perform his part of the agreement and that Potter had hauled or caused to be hauled some six thousand cubic feet of topsoil to the project sites named in the contract, the sole question remaining for the jury's determination was the amount of damages to which Bunch is entitled for Potter's failure to perform.

The judgment of the Circuit Court of Cabell County is affirmed.

*Affirmed.*