# Richmond

## BRUCE C. GUNNELL, ET AL. v. NELLO L. TEER COMPANY.

March 9, 1964.

Record No. 5668.

Present, All the Justices.

*Edward D. Gasson (F. Mather Archer; Jesse, Phillips, Kendrick & Gearheart,* on brief), for the plaintiffs in error.

*William A. Moncure (Clarke, Richard, Moncure & Whitehead,* on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

On March 20, 1960, John Thomas Gould, a civil engineer, employed by and representing Nello L. Teer Company, sometimes hereinafter referred to as the defendant or Teer, sought out Bruce C. Gunnell with reference to the purchase "of fill dirt" or "common borrow" to be used by Teer in the construction of a circumferential highway, also known as Route 413, a project of the State Highway Commission of Virginia. Gunnell owned several tracts of land containing about 125 acres, through which the highway was to be constructed.

There was a series of conferences between Gunnell and Gould, during which the two discussed the terms of a contract for the sale of the dirt. Gunnell knew Teer wanted to get the fill dirt from his land because it was closer to the project involved than another area allocated to Teer by the Highway Commission. During the negotiations, Francis L. Holloway, a civil engineer, who qualified as an expert in the field of soil mechanics, geology, engineering and road construction, at the direction of Teer, tested the soil of Gunnell for gravel. He satisfied himself that the gravel was suitable for use in the construction of the proposed road; but did not undertake to determine whether the common dirt was suitable. Gould also went upon plaintiffs' lands and made a visual and physical examination of the soil. Gunnell agreed that he would hold his land available for the exclusive use of Teer, and allow the latter a free hand in connection with the removal of the dirt; but that he would have to be paid "for tying up his land for the benefit of" Teer. He said that he would require Teer to provide for the payment of a minimum sum of money, regardless of whether it removed any dirt. In addition, Teer was to build a road on plaintiffs' land to haul the dirt to the highway under construction.

A contract embodying the agreement between Gould and Gunnell was executed on July 29, 1960, by the Nello L. Teer Company on the one part, and Bruce C. Gunnell and Virginia Burt Gunnell, his wife, hereinafter sometimes referred to as plaintiffs, parties of the second part. The contract contained the following recitals and provisions: a description of the Gunnell land involved, permission for

Teer to go on said property to remove dirt fill therefrom for the period of two years, or until it had completed its work on Highway Route 413; a provision that Teer would "remove 250,000 cubic yards of borrow, or in the alternative, pay Gunnell for 250,000 cubic yards of borrow [$12,500.00] as a minimum payment thereunder;" that Gunnell would make available 400,000 cubic yards of dirt fill, for which Teer would pay "5¢ per cubic yard, as measured in the pit for the borrow," or "minimum payment of Twelve Thousand, Five Hundred Dollars at the termination of this agreement or operation;" and that Gunnell would cooperate with Teer in acquiring necessary permits for the removal of the dirt. In addition, Teer agreed that it would construct "a haul road with a 70-foot wide right of way" from Gunnell's land to the intersection of Route 413 with Clermont Drive, and leave the road at the termination of the agreement "in good repair and passable."

After the execution of the contract, tests were run by defendant's agents on plaintiffs' land to ascertain the quality of the dirt, and although it was agreed between the parties that such tests should be submitted to the plaintiffs, no reports thereof were ever submitted. On the basis of the test results, the Highway Commission refused to allow the soil on plaintiffs' land to be used by Teer in the construction of the highway. Thereupon, Teer declined to take any dirt from plaintiffs' property, refused to pay them any sum of money, or to proceed with the construction of the proposed haul road. In the meantime, at the request of Teer, it had been given permission at least three times to delay the construction of the haul road, at which times it made no complaint that the contract was not to be regarded as in full force and effect.

On April 26, 1961, counsel for Teer, in reply to a demand from Gunnell that it perform its obligations under the contract, wrote a letter to Gunnell asserting that there "was a mutual mistake concerning the substance of the contract, because both parties were under the impression, at the time of entering into the contract, that Teer could and would use the borrow from Gunnell's property on the said project;" that since the dirt did not meet the specifications of the "State Highway Department," and it, Teer, was not allowed to use same, there was a failure of consideration; that, therefore, the contract had become impossible of performance; and Teer would not proceed with the construction of the haul road or pay the Gunnells any sum of money.

Plaintiffs, during this time, withheld the development of their property and kept it exclusively for the use of Teer until November, 1961. In March, 1961, a portion of their land had been rezoned from industrial to residential property, and plaintiffs claimed this reduced its value.

On November 6, 1961, Bruce C. Gunnell and Virginia Burt Gunnell, his wife, instituted this proceeding, by motion for judgment against Nello L. Teer Company for damages for breach of the above mentioned contract. They claimed that they were entitled to recover $12,500.00, regardless of whether any dirt was taken by Teer; and the further sum of $7,226.00 damages alleged to have been sustained by the failure of Teer to construct the said haul road, which latter amount represented the estimated cost of constructing the road.

Teer answered and for its defense relied upon the same grounds asserted in the letter of its counsel dated April 26, 1961.

At the conclusion of plaintiffs' evidence, the court reserved its ruling on a motion of defendant to strike the evidence. At the conclusion of all of the evidence, each party moved to strike the evidence of the other. The court, expressing doubt as to whether its conclusion was in conflict "with some mighty good law," overruled the motion of the plaintiffs, granted the defendant's motion, and entered judgment for the defendant. Plaintiffs excepted to each ruling of the court, and upon their petition, we granted this writ of error.

The controlling issue for our determination is, as stated by Teer in its brief: "Whether the contract in question was void and unenforceable on the grounds of mutual mistake, or impossibility of performance, due to a mutual mistake as to the existence of 'fill dirt' or 'borrow,' which would meet Virginia Department of Highways specifications."

The facts are not in material conflict. The lands of the plaintiffs contained sufficient deposits of fill dirt to satisfy the requirements of the contract. The only mistake was as to the quality of the fill dirt. The bargain between the parties was at arm's length. There was no warranty of quality. There was no evidence that the sellers were familiar with the special quality of their dirt, or with the specifications of the Highway Commission. Teer was familiar with those specifications, and if it had desired to make proper tests of the soil, it could have done so before signing the contract. It was admitted by Teer's representatives that there had been no discussion between the parties relative to the quality of the dirt. The State

Highway Commission was not a party to the contract. Teer did not see fit to require that the contract contain language making its purchase contingent upon future tests of the dirt, or some warranty that the dirt comply with the specifications of the Highway Commission, or a release from any subsequent difficulty which might arise. There was no claim of any element of inexperience, or reliance upon the representations of the plaintiffs.

Gould, the agent of Teer who conducted the negotiations leading to the contract, testified that "There were two basic facts that made me reach the conclusion that this material [dirt on plaintiffs' land] would be acceptable for common borrow." For the first fact, he said, "I went down in the cut, [where the R. F. & P. Railroad runs through a portion of the land of Gunnell with banks about 50 feet high on each side] examined it, took samples in my hand, and that is one fact, physical examination." Secondly, he said: "The other fact that made me feel that the material was suitable is the Circumferential Highway goes between the Area No. 1 and the Area No. 2, [lands of plaintiffs] as so designated. We have approximately a 50-foot cut right between those two pits in the main line of construction. The Highway designated that *that* cut material between Areas 1 and 2 would be used in embankment. So it was natural to assume that material—understand, that prior to preparing the plans, the highway goes through there and presumably, of course, the main line of construction—they take borings, and they classify the material, and they designated the material that is between Areas 1 and 2 to go into the embankment." He added that after the construction "they rejected that material, and we wasted it. We were not permitted to put it all in the embankment. *But the time I made the agreement, visual observation, and the data on the plans made me feel like the material was acceptable for common borrow.*" (Emphasis added.)

Under the evidence, there was an outright sale of dirt, without any misrepresentation or warranty of quality, to be used as fill or borrow material on a highway construction project. The dirt was in ample quantity. It was not inherently impossible to obtain 400,000 cubic yards, as contracted for, and the plaintiffs were ready, willing and able to perform their obligation. Teer knew what the Highway Commission's specifications as to quality were. It had ample opportunity to properly test the dirt before it entered into the contract. Its agents assumed, from such tests as were made, that the dirt would meet the requirements of the Highway Commission. The

soil of plaintiffs' land was adjacent to the highway project, and Teer naturally desired to avail itself of that situation and to make a greater profit by its use. It took a business risk. It made a mistake; but the mistake was unilateral. If the mistake caused a loss, the loss should fall on the party who made it. There was no duty on the plaintiffs to inform themselves as to whether the dirt met the requirements of the Highway Commission. That duty was on Teer in the absence of any misrepresentation or warranty.

In dealing with the contention that the interference of a third party, the State Highway Commission, a stranger to the contract, made it impossible for Teer to perform, the rule seems to be "well settled that the inability of the promisor to control the actions of the third party does not release the promisor from the obligation." *Barcroft Woods* v. *Francis*, 201 Va. 405, 409, 111 S. E. 2d 512; *Lehigh Portland Cement Co.* v. *Virginia Steamship Co.*, 132 Va. 257, 267, 111 S. E. 104.

See also, *Pond* v. *Fisher*, 201 Va. 542, 112 S. E. 2d 147; 12 Am. Jur., Contracts, § 363, pages 930-932; 17A C. J. S., Contracts, § 463 (1), pages 607-608; Williston on Contracts, Rev. Ed., Vol. 5, § 1567, page 4377; Vol. 6, § 1932, pages 5413-5414, § 1953, pages 5476-5477.

"The performance of an absolute promise is not excused by the fact that a third person refuses or fails to take action essential to performance." 12 Am. Jur., Contracts, § 370, page 942.

In *Lehigh Portland Cement Co.* v. *Virginia Steamship Co., supra*, 132 Va., at page 267, we quoted with approval the following principle:

"The rule appears to be that if one undertakes unconditionally to perform an act which is not inherently impossible, but merely requires the acquiescence or consent of a third party, or the performance of a preceding act by the latter, the nonperformance is not ordinarily excused by the fact that it subsequently proves impossible for the promisor to comply with the contract, because of the refusal of the third party to give his consent or perform the act; in other words, the contract will not, merely from the fact that acquiescence in or performance of an act by a third party must precede compliance therewith, be construed as conditional upon such acquiscence or performance."

See also *Foreman* v. *Caligari and Company*, 204 Va. 284, 290, 130 S. E. 2d 447; and *Virginia Iron, etc. Co.* v. *Graham*, 124 Va. 692, 701, 98 S. E. 659.

In *Bunch* v. *Potter*, 123 W. Va. 528, 532, 17 S. E. 2d 438, 440, this is said:

"A contract, without qualification or restriction, by one *sui juris*, to do or perform an act not in itself unlawful, immoral, or impossible of performance, casts upon him a duty, from the discharge of which he cannot excuse himself by reason of the lawful conduct or interference of a stranger to the undertaking. By neglecting to qualify his promise, so as to make such an excuse available, the promisor waives it as a defense against a recovery for non-performance."

In *Hill Sand & Gravel Co., Inc.* v. *Pallottine Fathers House of Studies, Inc.*, 220 Md. 526, 532, 154 A. 2d 821, 824, it was held that where both vendor and purchaser assumed as a basic fact that the land contained deposits of sand and gravel having a commercial value, and the only mistake of the parties was as to the quality of the sand and gravel, the purchaser was not entitled to relief from a bad bargain. The court said: "In the absence of misrepresentation, or inequitable conduct, by the seller, one who buys blindly must ordinarily take the natural consequences, as illustrated in the old adage about 'a pig in a poke.' "

See also *Wills* v. *Shockley*, 52 Del. 295, 297-8, 157 A. 2d 252, 253, where a defendant, at the time of entering into a contract, did not see fit to relieve himself from liability for his failure to perform by reason of a subsequent difficulty which arose from another source, the court quoted with approval the following statement from 12 Am. Jur., Contracts, § 363:

"In an ancient English decision it was declared that where the law creates a duty or imposes a charge and the party is disabled to perform it without his fault and has no remedy over, the law will excuse him, but where a party by his own contract creates a duty or imposes a discharge [charge] upon himself, he is bound to make it good if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract."

The defendant strongly relies upon the principles stated in *Virginia Iron, etc. Co.* v. *Graham, supra*, 124 Va., as being applicable to the facts in this case. The facts in that case are, however, distinguishable from those in this case. There the whole subject matter of the contract ceased to exist.

The Graham case involved a contract, the main purpose of which was to mine iron ore, the existence of which in a sufficient quantity to justify the continuance of the operation of mining operations for 40 years was assumed as a fact by both parties. It later became ap-

parent that each of the parties was grossly mistaken as to the quantity of the ore. The mistake was mutual, and as a consequence there was a failure of the consideration, and the lessee of the mine was granted relief. There was not in that case, as is here, a contingency provision in the contract that the lessee would remove at least a specified amount of material, or, in the alternative, pay the grantor a named amount as a minimum payment.

The burden was on the plaintiffs to show that they were damaged by the failure to construct the haul road, and the extent and amount of such damage. They showed only an estimate of the cost of constructing the road. There was no evidence whatever as to whether the haul road, if constructed, would increase or decrease the value of the Gunnell property, or to show the value of that property with, or without, the road. There was nothing upon which to measure or compute damages for the failure to construct the road. When damages are left to conjecture or speculation, there cannot be a recovery therefor.

The evidence presented no issue except one of law, that is, whether or not the contract was valid and enforceable. The parties agreed upon a minimum compensation of $12,500.00, a liquidated amount to be paid to the plaintiffs, regardless of whether the full amount of dirt contracted for was taken or not taken. That compensation, impliedly, was, in part at least, intended to be a consideration for the withholding of plaintiffs' land for the exclusive use and benefit of Teer during the period provided for in the contract.

For the reasons stated, we are of opinion that the court erred in sustaining the motion of the defendant to strike plaintiffs' evidence as to their claim for the minimum compensation of $12,500.00, and in entering judgment for the defendant. It appearing that the facts before us are such as to enable us to attain the ends of justice, the judgment of the trial court is reversed and set aside; and final judgment is here entered in favor of the plaintiffs for the sum of $12,-500.00. Code of Virginia, 1950, § 8-493.

*Reversed and final judgment.*