**Philip JUAREZ, Appellant,**

v.

**Richard HAMNER, Appellee.**

**No. 12–83–0101–CV.**

Court of Appeals of Texas, Tyler.

June 21, 1984.

---

Philip Juarez, Austin, for appellant.

Ann Y. Riddel, Weeks, Chapman & Buford, William Kemp, Kemp & Spiller, Robert C. Sneed, Sneed, Vine, Wilkerson, Selman & Perry, Austin, for appellee.

McKAY, Justice.

This is an appeal from a judgment rendered in favor of Richard Hamner and Gloria DeLeon, the buyers, and against Philip

Juarez, the seller, Maria Juarez, and Austin Title Co., Inc., for the cancellation of an earnest money contract and the return of the earnest money deposit.

On April 4, 1981, Richard Hamner and Gloria DeLeon, hereinafter referred to as buyers, entered into an earnest money contract with Philip Juarez, hereinafter referred to as seller, for the purchase of a house and lot in Austin, Texas. The buyers delivered to Austin Title Insurance Co., Inc., the sum of $3,000 as earnest money pursuant to the contract. The contract provided for a total sales price of $38,000 payable in cash. The contract further provided that the sale would occur within 90 days from the date of the contract.

The earnest money contract further provided as follows:

Within 10 days from the date hereof, Seller shall furnish to Buyer an Owner's Commitment for Title Insurance, issued by Austin Title Company, together with copies of all encumbrances, easements, restrictions, and other documents affecting title to the property. If Buyer finds any of such restrictions, easements, or encumbrances have a material adverse effect on title, in Buyer's sole judgment, Buyer shall notify Seller of such objection within 5 days of Buyer's receipt of such Commitment, and Seller shall have 60 days to cure same. If Seller is unable to cure such objections, Buyer may ... waive such objections ..., or Buyer may cancel this contract, in which event Buyer's earnest money shall be returned ....

Another provision of the contract provided that if seller's sale of the property constitutes a subdivision of the property in violation of the laws or ordinances of the State or the city, seller shall, prior to closing, obtain a re-subdivision so that the property shall constitute a legally subdivided lot, and if seller is unable to obtain such re-subdivision buyer may, at their election, waive such requirement, or cancel the contract and have the earnest money returned.

After the contract was signed, Austin Title Company issued a title commitment dated April 17, 1981, which showed that the record title to the property was vested in seller, Philip Juarez, and Maria Juarez, subject to sixteen requirements including a vendor's lien, state tax lien, federal tax lien, qualifying field notes, and satisfactory evidence that no person occupying the property owns or claims any interest therein. The contract did not name Maria Juarez as an owner, and she was not a party to the contract. Maria Juarez and Philip Juarez were in the midst of a divorce proceeding at the time the contract was signed.

On May 14, 1981, Maria Juarez delivered a written memorandum to the buyers, Hamner and DeLeon stating, "I will not now, nor during the period specified in the April 4, 1981, contract with Philip Juarez, agree in any way to transfer title or otherwise convey this property to you." In reliance upon the refusal of Maria Juarez to convey the property, the buyers made demand upon the seller and Austin Title Co., Inc., for the return of the $3,000 earnest money deposit. Despite the demand, the seller and Austin Title Co., Inc. refused to release the deposit to the buyers.

The buyers brought suit on July 9, 1981, against the seller Philip Juarez, Maria Juarez, and Austin Title Co., Inc., demanding cancellation of the contract, the return of the $3,000 earnest money deposit, attorneys' fees, and costs. Trial was to the court, and judgment was rendered in favor of the buyers. The court ordered the cancellation of the contract and ordered the return of the $3,000 earnest money deposit to the buyers. The seller was ordered to pay $1,800 in attorneys' fees to the buyers. Seller Philip Juarez appeals. Buyer Hamner alone responds to the appeal.

The seller Philip Juarez raises one point of error contending, "The trial court erroneously entered judgment for appellees in light of the absence of evidentiary or legal support for any of appellees' allegations; trial court's presumable [sic] findings of fact being contradicted by the conclusive evidence."

The buyers alleged in their pleadings (1) anticipatory repudiation of the earnest money contract; (2) if the sale would con-

stitute a subdivision in violation of a city ordinance, seller failed to subdivide in order to make a legal lot; (3) contract provided that time was of the essence, and if closing did not occur before July 4, 1981, because of appellant's failure to perform, the escrow deposit should be returned; (4) the property was subject to the jurisdiction of another court in which a divorce action between appellant Juarez and Maria Juarez was pending, and appellant was unable to convey a marketable title on or before July 4, 1981; and (5) the contract was unenforceable due to its ambiguity because the description in the contract does not conform to the area designated on the plat as the property to be conveyed.

The contract was signed April 4, 1981. The title company commitment was dated April 17, 1981. The letter of Maria Juarez was dated May 14, 1981. The date specified in the contract for the closing was July 4, 1981. The petition in this cause was filed by appellee on July 9, 1981, and the general denial of Philip Juarez was filed August 7, 1981, and that of Maria Juarez was filed on August 10, 1981.

Buyer Hamner contends that the seller's appeal should be dismissed because his point of error is too vague. We agree that the point of error is broad and general; however, we will liberally construe Tex.R. Civ.P. 418 and not dismiss the point of error. *Guynn v. Corpus Christi Bank & Trust*, 589 S.W.2d 764, 769 (Tex.Civ.App.— Corpus Christi 1979, writ dism'd).

■ The seller's general point of error raises a "no evidence" point since it refers to the "absence of evidentiary or legal support." In considering the no evidence point, we must consider only the evidence tending to support the finding, viewing it in the most favorable light in support of the finding, giving effect to all reasonable inferences that may be drawn therefrom, and disregarding all contrary or conflicting evidence. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981), *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

■ Since no findings of fact or conclusions of law were filed, the judgment must be upheld on any legal theory supported by the record. *Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex.1977).

The evidence shows that Maria Juarez was a joint owner of the property, and the property was the community property of Philip Juarez, the seller, and Maria Juarez. The evidence also reveals that Austin Title Company required Maria Juarez's signature in order to close the transaction. However, Maria Juarez signed a statement which stated that she absolutely, unequivocally, and unconditionally refused to convey the property. The buyers relied upon the refusal by Maria Juarez to convey her interest in the property, and they notified the seller that they considered the contract rescinded. Maria Juarez attempted to withdraw her repudiation after the buyers indicated that they considered the contract rescinded. In addition, the evidence shows that Philip and Maria Juarez were in the midst of a divorce proceeding.

The evidence further shows that the seller Philip Juarez testified that Robert Torres had an ownership interest in the property and lived in the garage apartment thereon. He was not a party to the purchase money contract, but he indicated to the buyers that he was an owner and was selling it.

It was also shown by the evidence that the legal description in the title commitment was different from that in the purchase contract. The buyer Hamner testified that he had found three different descriptions and had found documents indicating different owners.

The record further shows that Torres told the buyer Hamner that Maria Juarez said she was not going to sell the house, that she had seen the contract and objected to the whole thing. On May 13, 1981, Maria told the buyer Hamner that she was in Mexico at the time the contract was signed, that she had not seen the contract, and asked that nothing be signed until she saw the contract. She indicated that she had serious questions about all the properties she and her husband jointly owned and what was being done with them. On the

next day she signed the written statement set out hereinbefore.

Buyer Hamner testified he was concerned about (1) all the liens against the property; (2) the legal description; (3) tax records which did not show owner's name; (4) appellant's quitclaim deed to ex-wife Maria; (5) Torres' statement he was "going after" appellant for fraud; (6) Maria's statement that she was not going through with the deal; (7) the need to have the property "subdivided"; (8) the several thousand dollar tax liens by the IRS and the city and county; (9) whether appellant owned one-half or one-fourth since he quitclaimed one-half to Maria; (10) divorce decree not of record; and (11) three different descriptions of property.

The last witness was an official of the city of Austin who testified that part of the property which was to be conveyed was not covered by the metes and bounds description of sellers' property, and a plat of the property in question, made a part of the earnest money contract, was not a "legal lot" as part of it was out of the T. Burns subdivision and part was not. He said he attempted to plot the description in the title commitment onto the city block and lot map, and he was unable to do so because it was a "nonsense" description. He further testified that the legal description used in the contract did not conform with the plat which was attached to and made a part of the contract. He also testified that if there is a lot which is not a "legal lot" the city will not turn on the utilities to that lot and will not grant a building permit.

■ Since Maria Juarez was a necessary party to the conveyance, her unequivocally signed statement that she would not convey the property in question constituted a prospective inability of performance by Philip Juarez, the seller named in the contract. Even though Maria Juarez was not a party to the contract, her refusal to convey created a prospective failure of performance by the seller Philip Juarez which the buyers were entitled to reasonably rely upon and seek a rescission and return of their earnest money deposit. The seller's promised performance to convey the prop-

erty could not be rendered without performance by Maria Juarez. Maria's refusal to convey operated like any other supervening event that would make performance by the seller impossible or impractical. The fact that Maria Juarez was not a party to the contract is irrelevant because without Maria Juarez's joinder on the conveyance the seller Philip Juarez would be unable to complete the bargain.

■ In general one who contracts to render a performance or produce a result for which it is necessary to obtain the cooperation of third parties is not excused by the fact that the third party will not give consent or perform an act. *Helms v. B & L Investment Co., Inc.*, 19 N.C.App. 5, 198 S.E.2d 79 (1973); *Gunnell v. Nello L. Teer Company*, 205 Va. 28, 135 S.E.2d 104 (1964); *Foreman v. E. Caligari and Company*, 204 Va. 284, 130 S.E.2d 447 (1963); see Annot. 84 A.L.R.2d 108 (1962).

■ The buyers relied upon Maria's refusal to convey and materially changed their position before Maria retracted her statement; therefore, her retraction was ineffective. Restatement (Second) of Contracts § 256 (1981), provides that a retraction of a repudiation is effective only if the retraction is made before the injured party indicates to the other party that he considers the repudiation to be final. Comment c under § 256 explains that the injured party may prevent subsequent nullification of the repudiation by indicating to the other party that he considers the repudiation final. In the case at bar, once the buyers learned of the seller's prospective inability or impracticability of performance, they notified the seller that they were seeking a cancellation of the contract; therefore, Maria Juarez's retraction was ineffective.

Restatement (Second) of Contracts § 268 (1981) provides in pertinent part as follows:

Effect on Other Party's Duties of a Prospective Failure Justified by Impracticability or Frustration.

(1) A party's prospective failure of performance may ... discharge the other

party's duties or allow him to suspend performance.

The comment under § 268 states that the Restatement adopts the principle "that a continuing sense of reliance and security that the promised performance will be forthcoming when due, is an important feature of the bargain." The comment further states that if reasonable grounds for insecurity have arisen with respect to the future performance of one of the parties, then the other party may suspend performance.

When the buyers contracted with the seller in this case, a "basic assumption" upon which the contract was made was that the full fee simple title to the property could be conveyed. However, when Maria Juarez, the record title holder of a one-half interest in the subject property, refused to convey her one-half interest, the "basic assumption" was frustrated. That supervening event operated to discharge the parties duties even though the event did not make performance "absolutely impossible." Restatement (Second) of Contracts § 261 (1981) provides as follows:

Discharge By Supervening Impracticability

Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the nonoccurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged....

The comment under § 261 states that events that come within the rule are generally due either to "acts of God" or to *acts of third parties*. In this case, the act of a third party, Maria Juarez made performance by the seller Philip Juarez, the party to the contract, impracticable.

Restatement (Second) of Contracts § 251 (1981) provides that where reasonable grounds arise for the obligee to believe that the obligor will commit a breach by nonperformance, the *obligee may demand adequate assurances, and may, if reasonable, suspend any performance. The comment under § 251 states that a contract "imposes an obligation on each party that

the other's expectations of receiving due performance will not be impaired." The comment further states that an obligee who believes for whatever reason, that the obligor will not or cannot perform without a breach, is always free to act on that belief. Whether "reasonable grounds" have arisen for an obligee's belief that there will be a breach must be determined in the light of all of the circumstances of the particular case. The comment indicates that one important application of the rule stated in § 251 occurs when a party who has contracted to buy specific property discovers that the seller has neither present ownership of the property nor a right to become, or at least a reasonable expectation of becoming, the owner in time to perform. See Restatement (Second) of Contracts § 251 Comment c, illustration 5 (1981).

6 Corbin, Contracts § 1259 (1962 and Supp.1984), provides in pertinent part:

Prospective Failure of Consideration

When two parties have made a bilateral contract for an exchange of equivalent performances to be rendered simultaneously, the two promises are said to be concurrently conditional. The duty of each is conditional upon tender of performance by the other. If supervening events make it impossible for one of the parties to render substantial performance of his promise, two effects are at once produced: the other party is discharged from duty to render the return performance; and his right of action, if he has one, is no longer conditional upon his tendering this return performance. The condition of making such tender is eliminated by inability of the defendant to perform the agreed equivalent....

In a contract for the sale of land, conveyance to be at a future date, the existence of a mortgage or other defect in title does not prove prospective inability to convey the agreed title, if the mortgage or other defect is one which the vendor has power to remove by the agreed date. If the clearing of the defect depends upon *the will of some third*

*person,* one who has not expressed a willingness to cooperate in clearing it, a purchaser who was not aware of the existence of the defect when the contract was made is discharged from duty to buy; and his right of action is not conditional on tender of his own performance.... (Emphasis added.)

■ The contract in question specified that time was of the essence; therefore, when a reasonable expectation arose that Philip Juarez was unable to perform due to the refusal by his wife to convey the subject property, we hold that the buyers were justified in seeking to rescind the contract.

■ In this case the court was the trier of fact. The court found that the contract was cancelled, and the buyers were entitled to a return of their earnest money deposit. There were no findings of fact or conclusions of law requested or filed; therefore, the judgment of the trial court implies all necessary fact findings in its support. We hold that the trial court's finding that the contract was cancelled is supported by the evidence.

■ We hold that the unequivocally signed statement by Maria Juarez, a necessary party to the conveyance, is not a title defect as contemplated by the "60-day cure" provision found in the contract, and the buyers were entitled to rely upon her statement and seek a rescission and a return of their earnest money deposit.

■ In addition to the reasons above stated, there are other reasons why the seller cannot prevail. There is no evidence in the record to show that the seller was able to perform the necessary conditions specified in the contract and enumerated in the title commitment which were required in order for him to convey the property. Even though the seller was excused from performance after the buyers notified him that they considered the contract rescinded, the seller had to prove that he was able to perform, which he failed to do within the time specified in the contract. *Whitney Properties Corporation v. Moran,* 494 S.W.2d 587 (Tex.Civ.App.—Dallas 1973, no writ).

Juarez's point of error is overruled, and the judgment of the trial court is affirmed.