## CIRCUIT COURT OF CHESTERFIELD COUNTY

Conway

v.

Sally Peace
and Wendy Dickens

Case No. CH92–433

BY JUDGE WILLIAM R. SHELTON

June 8, 1992

The parties and counsel appeared before the Court on May 18, 1992. Following the plaintiff's evidence, the defendant made a motion to strike the evidence in regards to Count I of the Bill of Complaint. This motion was taken under advisement by the Court. Upon the conclusion of the evidence, the case was submitted to the Court for its ruling.

### Motion to Strike

Count I of the Bill of Complaint alleges a conspiracy to interfere with the plaintiff's trade, business, reputation and contracts between the plaintiff and its customers. The plaintiff has alleged a violation of Virginia Code § 18.2–499 and prays for damages pursuant to Virginia Code § 18.2–500.

The defendant's motion to strike was based on their argument that the plaintiff had failed to show that the acts of the defendants were done maliciously. "[W]hen the fact finder is satisfied from the evidence that the defendant's primary and overriding purpose is to injure his victim in his reputation, trade, business or profession, motivated by hatred, spite or ill-will, the element of malice required by Code § 18.2–499 is established . . . ." *Greenspan v. Osheroff*, 232 Va. 388, 398–99 (1986). The Court is not satisfied from the evidence

that injuring the plaintiff was the defendant's primary and overriding purpose, nor that the defendant's actions were motivated by hatred, spite or ill-will. The defendant's motion to strike as to Count I is therefore sustained.

## Findings as to Count II

Count II of the Bill of Complaint seeks recovery for an alleged tortious interference of contract. A *prima facie* case for tortious interference with contract is made when there is a showing of (1) the existence of a valid contractual relationship or business expectancy, (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Chaves v. Johnson*, 230 Va. 112 (1985).

The evidence presented at trial, however, was that the plaintiff's customers were free to terminate their contract with Apollo Hair Systems at any time. The only penalty suffered by the customer for such termination would be a cancellation of the Apollo Hair Systems warranty. The contract between Apollo Hair Systems and its customers was therefore an at-will contract. "Unlike a party to a contract for a definite term . . . an individual's interest in a contract terminable at will is essentially only an expectancy of future economic gain, and he has no legal assurance that he will realize the expected gain." *Duggin v. Adams*, 234 Va. 221, 226 (1987). When a contract is terminable at will, a fifth element must also be proven to establish a *prima facie* case. In addition to the four elements listed above, the plaintiff must allege and prove not only that there was an intentional interference causing a breach or termination of the relationship or expectancy, but also that the interference was effected through the defendant's employment of "improper methods." *Id.* at 226–27.

In *Duggins v. Adams*, the Virginia Supreme Court discussed what is meant by "improper methods." There, the Court wrote:

> [m]ethods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations or recognized common-law rules [citation omitted]. Improper methods may include violence, threats or intimidation, bribery, unfounded litiga-

tion, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship. *Id.* at 227.

The evidence shows that Apollo Hair Systems had entered into numerous contractual arrangements with customers for the providing of the Apollo Hair Systems service. The defendants were employees of Apollo Hair Styling and knew of the contractual arrangements between the plaintiff and its customers. The evidence further shows that when the defendants left the employment of Apollo Hair Systems, they compiled a list of Apollo Hair Systems customers. From this customer list, which was the property of plaintiff, the defendants intentionally contacted the plaintiff's customers to induce them to terminate their relationship with Apollo Hair Systems. This contact in turn resulted in a large number of Apollo customers terminating their relationship with the plaintiff. As a result, the plaintiff has been damaged. The evidence further shows that the defendants were able to secure the customer list only through a misuse of confidential, inside information belonging to the plaintiff, or other "improper methods."

Therefore, based on the evidence presented at trial, the Court finds: (1) that a valid contractual relationship or business expectancy existed; (2) that the defendants had knowledge of the relationship or expectancy; (3) that the defendants intentionally interfered with the contractual relationships or business expectancies of the plaintiff which caused or induced a breach or termination of the relationship or expectancy; (4) that the plaintiff has been damaged; and (5) that the defendants employed "improper methods." The Court is of the opinion that it is proper for Sally Peace and Wendy Dickens to be permanently enjoined from contacting or soliciting any of the plaintiff's customers as of March 1, 1992, or otherwise interfering with the plaintiff's contractual relationships or expectancies, from using any confidential information belonging to the plaintiff, and from dealing with, in any way, any of the customers of the plaintiff who have been directly or indirectly contacted or solicited by the defendants as a result of the use or knowledge of any confidential information belonging to the plaintiff.

At trial, the plaintiff presented evidence on the issue of damages. The testimony presented was that the plaintiff could expect each customer to generate approximately $1,000 in revenues each year. There

was also testimony concerning the number of customers which the plaintiff had lost since the defendants left their employment with the plaintiff. It is well settled in Virginia that the burden is on the plaintiff to prove his damage with reasonable certainty. Proof of absolute certainty, however, is not required when the facts and circumstances which have been proven are such as to permit an intelligent and probable estimate of the amount of damage or loss. *Holz v. Motor Co.*, 206 Va. 894 (1966). Yet, "when the amount of damages is left to conjecture or speculation, there can be no recovery therefrom." *Holz*, 206 Va. 894 (1966) *citing Gunnell v. Teer Co.*, 205 Va. 28 (1964). In the case at bar, the plaintiff has failed to present any evidence of the revenues which have actually been lost as a result of the acts of the defendants. It would be mere speculation for the Court to attempt to determine the number of the customers who terminated their relationship with Apollo Hair Systems because of the defendants' improper acts. Additionally, if the customers had continued to seek the services of the plaintiff, there was no evidence as to how long the customer would have remained customers of Apollo. Based on the evidence which was presented at trial, the Court finds that any award of damages would be based solely on conjecture and speculation and would thus be inappropriate. The Court therefore denies the plaintiff's prayer for damages.

## August 12, 1992

The Court has received the defendant's motion for the Court to reconsider its judgment. This matter was tried without a jury on May 18, 1992. Following the trial of this matter, the Court issued its letter opinion dated June 8, 1992. The Court ruled that the plaintiff had failed to establish the malice which is required by Va. Code § 18.2–499. Additionally, the Court rules that the plaintiff had proven its case for tortious interference with contract. While there was insufficient evidence for the Court to award damages, the Court did order that the defendant be permanently enjoined from contacting or soliciting any of the plaintiff's customers as of March 1, 1992, or otherwise interfering with the plaintiff's contractual rights or expectancies, from using any confidential information belonging to the plaintiff and from dealing, in any way, with any of the customers of the plaintiff who had been directly or indirectly contacted or solicited by the defendant as a result of the use or knowledge of any

confidential information belonging to the plaintiff. In the motion to reconsider, the defendant argues that information which was within the defendants' memory and subsequently used to their benefit did not constitute a misuse of inside or confidential information.

The law is well-settled in Virginia that the credibility of the witnesses and the weight to be given to their testimony are questions for the jury or the trial judge when sitting as the trier of fact. *Litchford v. Hancock*, 232 Va. 496, 499 (1987); *May v. Malcolm*, 202 Va. 78, 82 (1960); *Diggs v. Lail*, 201 Va. 871 (1960). As the trier of fact, the Court heard and considered the evidence which was presented on May 18, 1992. Having considered all of the evidence, the Court made certain findings which were set forth in its letter opinion. Based on the evidence, the Court found that the defendants were able to secure the customer lists only through a misuse of confidential inside information belonging to the plaintiff or had employed other improper methods to damage the plaintiff. Having made these findings of fact, the Court is not inclined to reconsider its previous ruling. Defendant's motion to reconsider is therefore overruled.