## Staunton

SLIGO PARKWAY APARTMENTS, ETC., ET AL. v. LANDSCAPE
ENGINEERING COMPANY, INC.

September 4, 1956.

Record No. 4556.

Present, All the Justices.

The opinion states the case.

*John Alvin Crogham*, for the plaintiffs in error.

*Karl G. Sorg*, for the defendant in error.

(Case submitted on briefs)

BUCHANAN, J., delivered the opinion of the court.

The appellants, herein called the plaintiffs, brought this action against the defendant, Landscape Engineering Company, Inc., for damages for breach of contract. The defendant filed a counterclaim for $300 and recovered a verdict and judgment for that amount. The issue here is whether the verdict was plainly wrong or without evidence to support it. Code § 8-491.

By contract dated April 19, 1950, the defendant agreed to furnish and plant certain trees and shrubbery at the plaintiffs' apartment buildings in Silver Spring, Maryland, which was to be done according to specific plans and specifications. All plant materials were to be in vigorous growing condition, trees were guaranteed for at least one year, and replacements were to be made at the beginning of the first succeeding planting season. The plaintiffs agreed to pay the defendant $2,480 for this work and materials "as far as executed and fixed in place."

There is no substantial conflict in the material evidence. The original planting under the contract was done in May or June, 1950. William H. Handy, Jr., the president of the defendant company and its only witness, testified that in September, 1950, his company made replacements and plantings which the Federal Housing Administration inspector had found necessary to complete the original job and afterwards received a check from the plaintiffs, which is dated October 13, 1950, for $280, which with previous payments left $300 of the contract price unpaid, and which would not be due until the end of the warranty period under the contract.

Handy further testified that he went back in the spring of 1951 and saw that there were trees that needed to be replaced, but it was then too late in the season and he told the plaintiffs' president that the defendant would take care of them in the fall, which he said would be the expiration of its guaranty period. In October, 1951, he said, he took a crew of men and a foreman, told them what to do and left and was not back until the spring of 1954.

The evidence for the plaintiffs, from several witnesses, was to this effect:

The replacement work done in October, 1951, was after repeated requests, several promises, and finally a letter dated October 8, 1951, to the defendant from the plaintiffs' president stating that unless the dead trees and shrubbery were replaced by October 18, the plaintiffs would have the work done by somebody else at the cost of the defendant.

The replacement work was done by two laborers who spent a few hours in setting out 47 trees to replace those which had died. The holes dug for them were shallow, no fertilizer was used, no stakes or guy wires were erected, and the trees themselves were spindly and dry with no dirt around the roots. That night it rained and next morning all these trees were down, either leaning on the cars in the park-

ing area or lying on the ground. Nobody ever came to replant or replace them.

There was no contradiction of this evidence other than the testimony of Handy that he was notified that the trees had fallen and he told his foreman to go back and straighten them up, but he did not know whether he went.

On December 10, 1951, the plaintiffs' president wrote the defendant that the plaintiffs had done all they could do to straighten these trees up and save as many as possible, but he did not believe they would grow. On July 21, 1952, he wrote again to the defendant that 42 of these trees did not live. By letter of July 22, 1952, defendant's president acknowledged receipt of the last-mentioned letter and stated: "We shall be glad to make these replacements upon receipt of your check in full for the balance due on this project." To this the plaintiffs' president replied by letter of July 25, 1952, that his companies "will not pay you the balance due for landscaping until the trees are properly replaced." In response the defendant wrote, on July 28, 1952: "If we receive payment, which is way past due, before October 1, then we will prepare to make the replacement of the 42 trees in question, but, until such time as we do receive payment, we shall make no replacements."

Admittedly all of the $2,480 consideration for the contract that remained unpaid was the $300, which was not due until the work contracted to be done had been properly performed. The undisputed evidence is that some of the trees had died within the warranty period of the contract. The defendant recognized its obligation to replace these trees and attempted to do so, but due to faulty material or negligent work, or both, the replacements also died. The defendant was not entitled to have this balance of the contract price until it had properly performed the work it had contracted to do.

The court correctly instructed the jury that "if you believe that the defendant requested payment of money under the contract by the plaintiff and you further believe that defendant was not at the time of such request entitled to receive such payment from plaintiff because of defendant's non-performance of the contract, then defendant's refusal thereafter to further perform his contract constituted a breach thereof and the jury must find for the plaintiff."

There is no question under the evidence that the defendant was not entitled to receive payment of the $300 at the time of its demand and its refusal to comply with its contract unless that condition was

met clearly constituted a breach of that contract for which the plaintiffs were entitled to recover damages. The verdict disallowing damages to the plaintiffs was therefore without evidence to support it, was plainly wrong, and must be set aside. *Acme Markets* v. *Remschel*, 181 Va. 171, 24 S. E. 2d 430; *Thalhimer Bros.* v. *Buckner*, 194 Va. 1011, 1013, 76 S. E. 2d 215, 217.

The court further correctly instructed the jury that the measure of the plaintiffs' damages for such breach would be the difference between the contract price ($300 of which remains unpaid) and the amount reasonably necessary to be expended by the plaintiffs to complete the work which the defendant contracted to do. There is some conflict in the evidence on what that amount may be, which does not permit a final judgment here under Code § 8-493.

The judgment below is therefore reversed and the case is remanded for a retrial solely on the issue of the plaintiffs' damages.

*Reversed and remanded.*