## Richmond

DUFF MCDUFF GREEN, JR., ETC., AND DUFF MCDUFF GREEN, SR.
v. FRANK L. BURKHOLDER, ET AL., ETC., AND FIDELITY
& CASUALTY COMPANY OF NEW YORK.

April 22, 1968.

Record No. 6570.

Present, All the Justices.

*Russell H. Roberts* (*Ashby & Roberts*, on brief), for plaintiffs in error.

*Robert K. Woltz; Benjamin H. Woodbridge, Jr.* (*Scully & Woltz; Jamison and Woodbridge*, on brief), for defendants in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action for the breach of a written contract, and the issue to be decided is whether the plaintiffs sufficiently proved damages.

By a written agreement dated June 22, 1964, Green and others, plaintiffs, granted to Burkholder and Burkholder, a partnership, referred to herein as Burkholder or defendants, the right to remove

gravel and other material from gravel pits on the land of plaintiffs for use in the construction of Interstate Highway 95, in Stafford county. The Fidelity & Casualty Company of New York, the other defendant, was surety on the Burkholder payment and performance bond for the construction of said highway. For the right so granted, Burkholder agreed to pay plaintiffs eighteen cents per cubic yard for the material removed and in addition to smooth over the surface from which the materials were taken by Burkholder, as well as by prior lessees, and to replace, spread and level off the stored topsoil, to pile all oversize rocks and perform other duties as described in Paragraph 10 of the contract.*

In November, 1965, plaintiffs filed a motion for judgment against Burkholder and the Surety Company, alleging that Burkholder had failed to pay all of the money consideration for the contract and had failed to perform the cleanup and smoothing operations required by the contract. Plaintiffs sought damages in the sum of $85,000 for these breaches of the contract. The defendants filed answers, a jury was waived, the court heard the evidence and entered judgment for the plaintiffs against Burkholder and the Surety Company in the amount of $2,764.20, of which $1,744.20 was for materials excavated and not paid for, and $1,020.00 was for cost incurred by the plaintiffs in obtaining certain cross-sections.

The court held, however, that the plaintiffs had "failed to meet the burden of proof with respect to damages resulting from the failure of Burkholder & Burkholder to complete the smoothing-over operations and other duties called for in Paragraph 10 of the contract";

---

* "10. It is further understood and agreed that upon the expiration of this lease, BURKHOLDER shall smooth over the surface from which materials have been excavated by Bero Engineering and Construction Corporation under a prior lease, and by B. F. Diamond Construction Co., Inc. and B. F. Diamond, individually and trading as Diamond Construction Company under prior leases and shall likewise smooth over the surface from which material has been excavated by BURKHOLDER, and replace and spread and level off the stored top soil, confine the sludge to sludge holes and to such areas designated by GREEN or designated representative, pile all over-size rocks in neat piles at points designated by GREEN, and provide a grid, cattle guard, or other suitable structure acceptable to GREEN across the gap in the fence to prevent GREEN'S cattle from entering. BURKHOLDER shall likewise repair all roads used in pursuance of this agreement so that they will be in as good condition upon the expiration of this agreement or any renewal hereof as before excavation was begun in pursuance hereof, and further apply to the surface of said road or roads between the King's Highway and the foot of the first hill south of GREEN'S bungalow, water or a suitable calcium treatment during the summer months or other dry spells to keep down dust from vehicles exercising the right of ingress and egress herein provided."

and the court ordered that no damages be awarded to the plaintiffs therefor. From this holding the plaintiffs have appealed.

Both plaintiffs and defendants presented witnesses who testified without objection as to their estimates of the cost of smoothing over the land and doing the other operations required by said Paragraph 10 of the contract. No evidence was offered by either party as to the value of the land itself.

Two witnesses, experienced contractors, who had examined the premises, were called by the plaintiffs. They testified as to the quantities of materials involved and the machinery and work required to do the leveling, smoothing and other operations required by Paragraph 10 of the contract. One testified that the area involved was about twenty-five acres and it looked to him like it was "going to be somewhere around fifty-two thousand dollars" to do the work. He conceded, however, that he based his calculation on the most expensive method of doing the work, and that it was possible that other methods and means could be employed which would reduce his estimate materially. The other witness for plaintiffs estimated that the smoothing over and the piling of the rocks would cost from ten to twelve thousand dollars for one of the pits, plus fifty to sixty cents per cubic yard for moving the topsoil.

Three witnesses were introduced by the defendants on the subject. The first was Robert Burkholder, one of defendants, who testified that he had made an estimate of the cost of smoothing over the surface, spreading the topsoil and picking up the rocks as required by the contract, and his estimate was $9,000.00. This witness was asked by his counsel whether he would have been able to acquire this particular gravel from the Green property at the price of eighteen cents a cubic yard without the provision for smoothing out. He replied, "The answer is no. It's obvious."

The second witness placed the cost of doing the required work at $10,000.00; and the third testified that he was president of a company which specialized in earth moving, that he had examined the property, had read the provisions of the contract, and his total estimate for doing the work required by the contract was $9,750.00, and that he "would be very happy to sign a contract for that effect this morning."

The court below did not state in its judgment order the basis of its holding that the plaintiffs had failed to meet the burden of proof in respect to damages. In their brief in support of the judgment the defendants say: "The entire record is bereft of testimony offered by

the plaintiffs demonstrating that the market value of plaintiffs' property was diminished because the pits were not smoothed over or that the market value of the property would be increased upon completion of the smoothing-over operations."

Presumably this was the reason for the court's ruling that the plaintiffs had not carried the burden of proof with respect to damages.

[1] But that was not the theory on which the case was tried. As stated, no evidence was offered as to the value of the plaintiffs' property. Both parties introduced evidence only on the question of the cost to the plaintiffs of completing the work which the defendants had contracted to do but did not do. Having accepted that as the issue and tried the case on that theory, it is late for the defendants to say that the proper measure of damages was the difference between the before and after value of the property. Cf. *Barcroft Woods* v. *Francis*, 201 Va. 405, 410, 111 S.E.2d 512, 517.

[2] But aside from that, we hold that the proper measure of damages was the reasonable cost of completing the work the defendants contracted to do but did not do.

In *Mann* v. *Clowser*, 190 Va. 887, 904, 59 S.E.2d 78, 86, we quoted with approval from 5 Williston on Contracts, Rev. Ed., § 1363, pp. 3825-6, the statement that where the contractor fails to keep his agreement, the measure of the employer's damages "is always the sum which will put him in as good a position as if the contract had been performed. If the defect is remediable from a practical standpoint, recovery generally will be based on the market price of completing or correcting the performance, and this will generally be shown by the cost of getting (the) work done or completed by another person. If the defect is not thus remediable, damages are based on the difference between the value of the defective structure and that of the structure if properly completed. * *"

We also approved the principle stated in Restatement of the Law of Contracts, § 346, that for defective or unfinished construction the owner can get judgment for the reasonable cost of construction and completion in accordance with the contract, if this is possible, and does not involve "unreasonable economic waste"; otherwise, for the difference in value between the product contracted for and the one produced.

We said in the *Mann* case that the determination of which rule should be applied will depend on the facts and circumstances of the particular case, and that the lower court was right in measuring the owners' damage by the "cost rule" rather than by the "value rule."

In *Kirk Reid Company* v. *Fine*, 205 Va. 778, 787, 139 S.E.2d 829, 835-36, a case of faulty equipment in an office building, we said that an award of an amount sufficient to replace any of the equipment would not have been justified because of the unreasonable economic waste involved and the presence of other factors referred to.

[3] In *Sligo Apts.* v. *Landscape Company*, 198 Va. 349, 94 S.E.2d 208, the defendant agreed to furnish and plant certain trees and shrubbery at the plaintiffs' apartment building. Some of the trees died within the warranty period of the contract and the defendant attempted to replace them, but due to faulty material or negligent work the replacements also died. We approved the instruction of the trial court to the effect that the measure of the plaintiffs' damage (incorrectly stated in next to the last paragraph of the opinion) was the reasonable cost of replacing the trees lost because of defendant's failure properly to perform its contract.

In the present case defendants argue that the work contracted for was a physical change in real estate to which the case of *Gunnell* v. *Teer Company*, 205 Va. 28, 135 S.E.2d 104, is applicable. There the parties entered into a contract by which Teer was given permission to take from Gunnell's land 250,000 cubic yards of dirt fill, or pay for that quantity, at five cents per cubic yard, for use by Teer on highway construction; and in addition to build a road on Gunnell's land to haul the dirt to the highway under construction. The Highway Department refused to allow the dirt to be used, and Teer declined to take or pay for any dirt or to construct the road.

In an action by Gunnell for damages against Teer, the court sustained defendant's motion to strike and entered judgment in its favor. We reversed and granted judgment to Gunnell for $12,500, the minimum payment under the contract, but allowed no damage for failure to build the road, on the ground that the plaintiffs "showed only an estimate of the cost of constructing the road. There was no evidence whatever as to whether the haul road, if constructed, would increase or decrease the value of the Gunnell property, or to show the value of that property with, or without, the road. There was nothing upon which to measure or compute damages for the failure to construct the road. * *" 205 Va. at 35, 135 S.E.2d at 109.

In other words, it was adjudged that in consideration of all the facts of that particular case, the value rule should be applied in determining whether the plaintiffs should be allowed damages because of failure to build the road in addition to the substantial amount required to be paid to them for dirt which was not taken.

The facts in the present case establish a different situation which, in our judgment, requires the application of the cost rule, in accordance with what seems to be the general rule in such cases.

In an Annotation in 123 A.L.R., beginning at page 515, on the subject of cost of correction or completion as the measure of damages for breach of building contract, or other contract to change condition of real property, it is stated at page 520, and supported by many cited cases, that

"In almost all, if not in all, of the jurisdictions in which the precise point has arisen, cost of correction or completion rather than loss in property value ordinarily affords the proper basis for measuring the damages which result to the owner from the breach of a building or construction contract, or other contract to change the condition of real property. The propriety of applying such measure of damages is especially clear where correction or completion would not involve unreasonable destruction of work done by the contractor and the cost thereof would not be grossly disproportionate to the results to be obtained."

There is no evidence to indicate and nothing to suggest in the present case that the cost of doing the work which the defendants contracted to do and did not do would be grossly disproportionate to the results to be obtained, or would involve economic waste; and hence such reasonable cost is the proper measure of plaintiffs' damages. As stated, both parties accepted the "cost value" as the applicable measure of damages and introduced their evidence on that subject. It then became the duty of the trial court to determine from that evidence the amount of plaintiffs' damages.

The judgment appealed from is therefore reversed and the case is remanded to the trial court with direction to assess the amount of damages it deems to be proper on the evidence introduced and enter its judgment accordingly.

*Reversed and remanded.*