# Angela H. Brown

## v.

## Tangee S. Brown and Tomisha B. Brown, Infants, by their Next Friend, Marian Beacham, et al.

Record No. 911479

September 18, 1992

Present: All the Justices

*Michael Owen Wells (Irving M. Blank; Wells, Paris, Blank & Brown*, on briefs), for appellant.

*Larry A. Pochucha (Bremner, Baber & Janus*, on brief), for appellees.

JUSTICE WHITING delivered the opinion of the Court.

In this suit for specific performance of a separation agreement, we consider the timeliness of tender of performance on behalf of a husband and the impact of federal statutes upon a wife's waiver of her interest in the husband's employee benefit plans.

On February 27, 1988, Angela H. Brown and her husband, Winfree Brown, separated. A separation agreement was drawn, which Angela signed on May 15, 1990, and Winfree signed on June 4, 1990. Both signatures were notarized.

In the agreement, Winfree agreed to pay Angela a lump sum of $20,000 and Angela agreed to prepare and execute a deed conveying to him her interest as a tenant by the entirety in the family residence. Paragraph 16(A) of the agreement provided:

> In consideration of the lump sum payment made pursuant to the provisions hereof, Wife does hereby waive any and all claim she has or may have to any interest in the employment benefits of Husband, including retirement or pension plans, . . . profit-sharing plans, . . . insurance benefits, annuities or otherwise.

To carry out the terms of the agreement, each party agreed to "execute, acknowledge, and deliver to the other party any and all further instruments or documents which may be required to give full force and effect to the provisions of this Agreement."

No time was specified in the agreement for Winfree's payment to Angela. However, in a letter dated August 15, 1990, Winfree's attorney advised Angela's attorney of Winfree's plan to obtain the $20,000. This was to be by "proper application with Philip Morris," Winfree's employer and the administrator of his various employee benefit plans, for a partial distribution in an amount slightly over $15,000 of his interest in the employer's deferred profit-sharing plan. Also, the letter advised Angela that Winfree would execute a $5,000 note for which he would "obtain an equity line in order to pay that amount." Angela voiced no objection to this plan.

A divorce suit was filed, but no decree of divorce had been entered by September 6, 1990, the date on which Winfree was killed. A check from Philip Morris for $15,840.75, dated August 24, 1990, and payable to Winfree, was found in the glove compartment

of his car at the time of his death. The check represented a partial distribution of Winfree's interest in the deferred profit-sharing plan.

Winfree died intestate, and in the separation agreement Angela had relinquished her right to take under the law of intestacy. If the agreement is valid and enforceable, Tangee S. Brown and Tomisha B. Brown, the two infant children of Angela and Winfree, would be Winfree's sole heirs at law and Angela would have no interest in his estate. Hence, if Angela's waiver of her interest in Winfree's employee benefits is enforceable, Tangee and Tomisha would ultimately receive those benefits.

Angela qualified as Administrator of the Estate of Winfree Brown on September 10, 1990. On September 24, 1990, Winfree's sister, Marian Beacham, acting as the next friend of Tangee and Tomisha, brought an equity suit against Angela in her individual capacity and as administrator, and against the two children. Beacham sought Angela's removal as administrator and Angela's specific performance of the separation agreement.

On November 2, 1990, Angela filed an answer to Beacham's bill of complaint in her individual capacity and as administrator, alleging that the agreement was invalid and impossible to perform. Also, by December 4, 1990, Angela had notified Philip Morris of her election to receive Winfree's share of the profit-sharing plan in 1991.

On December 4, 1990, the court removed Angela as administrator and substituted Beacham and Clara B. Brown, Winfree's mother, as co-administrators d.b.n., subject to their qualifying, which they did on the same day. At a hearing on December 21, 1990, by order entered January 18, 1991, the court enjoined Angela from spending any of the proceeds of the group life insurance policy or of the deferred profit-sharing plan, "both of which are now scheduled to be paid to Angela H. Brown."[1]

On January 11, 1991, the complainants' counsel wrote Angela's counsel and enclosed for her signature copies of a proposed deed for the real estate and a proposed assignment of Angela's interest in Winfree's employee benefit plans. Angela was also requested to endorse the proceeds check from the life insurance policy on Winfree's life. Upon a determination that there were no additional life

---

[1] The record does not disclose what action was taken by either party following the expiration of the seven-day period from December 21, 1990, during which time the January 18, 1991 order restrained Angela "from negotiating the check representing life insurance proceeds."

insurance proceeds, she was advised that she would be paid the $20,000 stipulated in the separation agreement. Neither Angela nor her counsel responded to the letter.

When asked about the January 11 letter at an *ore tenus* hearing on February 22, 1991, Angela indicated that she had not complied with the requests because "at the time of my husband's death, I fe[lt] that the separation agreement could not be enforced. The agreement was not with his estate, it was with him. He had not complied [with] what he was supposed to do prior to his death."

Instead of offering evidence at the end of the complainants' evidence, Angela made a motion to dismiss the case, and later filed a supplemental memorandum. In support of her motion, Angela contended that the separation agreement was no longer binding upon her for the following reasons: (1) the complainants had not proven that either Winfree or the complainants had tendered the $20,000 consideration to her; (2) the evidence showed that neither Winfree nor the estate had the necessary funds to pay her the required consideration; and (3) the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461, and amendatory provisions thereto in the Retirement Equity Act of 1984, Pub. L. No. 98-397, 98 Stat. 1426 (collectively ERISA) preempted Angela's alleged waiver of Winfree's plan benefits. The court took the motion under advisement.

On the day of the *ore tenus* hearing, Angela's counsel wrote counsel for the complainants and notified them that because of the unreasonable delay in closing the transaction "and for other reasons," she considered the agreement "null and void" and would refuse any "offer of payment in the future." Three days later, on February 25, the complainants filed a special plea alleging that the estate of Winfree Brown was "ready, willing and able to perform the agreement." They also tendered a $20,000 check payable to the circuit court to be delivered to Angela upon her execution of the tendered documents terminating all her interests in the estate and in the employee benefits. Angela filed a response in which she alleged that this tender came too late.

The trial court concluded that under the circumstances, the February 25 tender was made within a reasonable time from the effective date of the separation agreement. Also, after deciding that ERISA did not preclude enforcement of Angela's waiver, the court ordered Angela's specific performance of her agreement. Angela appeals.

Advancing three contentions, Angela argues that the trial court erred in its ruling upon the issue of tender. The first contention is that the trial court lacked jurisdiction to consider the issue of tender because the complaint failed to aver either a tender of performance by the complainants or their willingness or ability to perform the separation agreement. This issue was not raised in the trial court and ordinarily it would not be considered on appeal. Rule 5:25.

■ However, citing *Green and Suttle* v. *Massie*, 62 Va. (21 Gratt.) 356 (1871), and *Stuart's Heirs* v. *Coalter*, 25 Va. (4 Rand.) 74 (1826), Angela argues that since an equity court cannot exercise jurisdiction in a specific performance suit without these allegations, she can raise the issue for the first time on appeal. *Massie* and *Coalter*, however, were cases in which the pleadings and the evidence showed that the equity courts had no jurisdiction. Here, before the case was decided, a pleading was tendered and evidence was adduced that the complainants were "ready, willing, and able to perform." Thus, the chancellor ultimately had jurisdiction to consider the complainants' claim. *Miller* v. *Miller*, 25 W. Va. 495, 503 (1885).

■ Angela's second contention is that the court should not have permitted the complainants to file the supplemental pleading that alleged their tender, nor should it have considered evidence of such post-trial tender after "the case had been submitted to the court for decision and taken under advisement." The court's decision on these issues is a matter of judicial discretion. *Fink* v. *Higgins Gas & Oil Company*, 203 Va. 86, 90-91, 122 S.E.2d 539, 542-43 (1961) (reopen case and introduce additional evidence); *Herndon* v. *Wickham*, 198 Va. 824, 826-27, 97 S.E.2d 5, 7 (1957) (amendment of pleadings). Because Angela failed to raise the issue of tender until after the complainants rested their case, we find no abuse of discretion in this instance.

Angela's third contention is that in determining whether tender was made within a reasonable time, the court applied the wrong time period. Angela claims that the court should have applied the eight and one-half month period from the execution of the agreement on June 4, 1990, to the date of trial on February 22, 1991, rather than the three-month period that ran between June 4, 1990, and September 4, 1990, the date of Winfree's death.[2]

---

[2] The trial court noted erroneously that Angela qualified on September 5, the day following Winfree's death. The record indicates that she qualified on September 10, but we do not regard the intervening five-day period as material.

Obviously, the period of almost three months, from September 10, 1990, to December 4, 1990, when Angela was the administrator, cannot be counted in determining whether tender was made within a reasonable time. As administrator, Angela was the party who should have made the tender during that time. And, because Angela's pleadings evidenced a repudiation of the contract after Winfree's death, no further tender was required. *Two-Way Tronics* v. *Greater Wash. Educ. Television Assoc.*, 206 Va. 110, 116, 141 S.E.2d 742, 746 (1965). Accordingly, the trial court applied the proper time period.

■ Hence, we conclude that the court held correctly that tender was made within a reasonable time and that the separation agreement was binding upon Angela.

■ Nevertheless, Angela claims that because tender was made after Winfree's death, ERISA provisions prevent enforcement of the waiver of her interest in Winfree's benefit plans. Judy C. Underwood, a supervisor of the plan administrator, testified that Winfree's retirement and deferred profit-sharing plans were ERISA plans. And, "ERISA comprehensively regulates, among other things, employee welfare benefit plans that, 'through the purchase of insurance or otherwise,' provide . . . benefits in the event of . . . death. § 3(1), 29 U.S.C. § 1002(1)." *Pilot Life Ins. Co.* v. *Dedeaux*, 481 U.S. 41, 44 (1987). Hence, in the absence of a showing to the contrary, we assume that Winfree's insurance benefit plan was also subject to ERISA.

■ ERISA preempts enforcement of any state law or contractual provision that "relates to" an ERISA employee benefit plan and conflicts with an ERISA provision. *FMC Corp.* v. *Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407 (1990) (state law); *Dedeaux*, 481 U.S. at 44-45 (punitive damages for breach of contract). Angela contends that two ERISA sections support her position.

First, the Act provides that "[a plan administrator ] shall discharge his duties with respect to the plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D).

Second, under the Act, a participant's election to change a beneficiary

shall not take effect unless —

(A)(i) the spouse of the participant consents in writing to such election, . . . and (iii) the spouse's consent acknowledges

the effect of such election and is witnessed by . . . or a notary public.''

29 U.S.C. § 1055(c)(2).

According to Angela, in order to remove her as a beneficiary of Winfree's employee benefit plans, these ERISA provisions and the plans themselves require ''a special spousal consent form'' and ''spousal consent forms for the designation of another named beneficiary . . . must be on file with the Plan Administrator in order to effect any change of beneficiary.'' Because she had signed no such form and no form of any kind was filed with the plan administrator, Angela concludes that enforcement of her waiver would constitute the enforcement of a contract (the separation agreement waiver) in violation of ERISA and plan provisions.

The record discloses that Underwood testified, without objection, that Winfree's retirement and deferred profit-sharing plans required Angela's notarized consent to her removal as beneficiary.[3] However, neither the ERISA sections cited, nor Underwood's testimony, indicates that either ERISA or the plans requires a special form for such consent, apart from a notarization of the spousal consent. Nor did the evidence show that Angela's notarized waiver was insufficient to constitute the required notarized spousal consent.

And, the cases cited by the parties indicate that a notarized waiver in a separation agreement can be an ERISA-sufficient spousal consent to a change of beneficiary. A separation agreement waiver that specifically referred to the other spouse's employee benefit plans in language similar to that of paragraph 16(A) was held sufficient to remove the waiving party as a designated beneficiary in the other party's ERISA plan. *Fox Valley & Vicinity Constr. Workers Pension Fund* v. *Brown*, 897 F.2d 275, 280 (7th Cir.), *cert. denied*, 498 U.S. 820, 111 S.Ct. 67 (1990).[4]

On the other hand, where a former wife's notarized separation agreement waiver did not refer specifically to her former husband's

---

[3] We do not consider the unauthenticated, written descriptions of two Philip Morris benefit plans that Angela lodged in the record, attached to a memorandum she filed in the trial court, because they were not made exhibits. Rule 5:10.

[4] Angela attempts to distinguish *Fox Valley* on the ground that its plan did not require a spousal consent to a change of beneficiary. However, the *Fox Valley* plan was one that allegedly complied with ERISA, and its terms would have been incorporated in the plan. *Nedrow* v. *MacFarlane & Hayes Co. Emp. Profit Sharing Plan & Trust*, 476 F.Supp. 934, 937 (E.D. Mich. 1979). As we have noted, 29 U.S.C. § 1055(c)(2) required spousal consent to the *Fox Valley* change of beneficiary.

benefit plans, her waiver was held to be an insufficient ERISA consent. *McMillan* v. *Parrott*, 913 F.2d 310, 311-12 (6th Cir. 1990). Also significant to this case is the additional ground for the holding that the *McMillan* ERISA plan required "a new or revised [beneficiary] designation in such form as the Plan Administrator shall provide." *Id.* at 311.

■ Because no special spousal consent form is required by ERISA or the plans, we conclude that Angela's notarized signature of the separation agreement constituted a sufficient spousal consent to a change of beneficiary.

Even so, Angela points out that the evidence does not disclose that her notarized waiver had been filed with the plans' administrator, as required by ERISA. Angela cites no evidence that indicates the plans required a filing of the separation agreement at any particular time before the plans' proceeds were distributed. Nor does she cite any such ERISA provision. Instead, Angela merely notes dicta in *Fox Valley* that "the settlement waiver is effective when it becomes known to the Fund before payment." 897 F.2d at 282. Angela reasons, therefore, that her waiver cannot be effective because there was no evidence that Philip Morris had notice of her waiver.

However, this case is not an interpleader suit brought by a plan administrator to determine its liability for payment of an ERISA plan proceeds to one of two adversary claimants, as in *Fox Valley*. Here, the plan administrator is not a party to the litigation, and we are concerned solely with a dispute between adverse claimants to the plans' proceeds.

■ Therefore, we do not decide what liability, if any, Philip Morris has for payments that might have been made to Angela before notice of her waiver. We merely conclude that the alleged lack of notice does not alter Angela's obligation to specifically perform her contract by signing the necessary forms to consent to a change of beneficiary. And, if Angela has collected any of the proceeds of Winfree's policies and specific performance cannot be decreed for that reason, the trial court can provide alternate relief by way of a money judgment. *Winston* v. *Winston*, 144 Va. 848, 859, 130 S.E. 784, 787 (1925).

Also, Angela notes that the parties were divorced in *Fox Valley*, but provides no statutory or case authority that supports her contention that this is another ground for distinguishing *Fox Valley*. In our opinion, this factual distinction makes no legal difference.

In sum, we conclude that a proper tender was timely made and that ERISA does not preempt enforcement of Angela's waiver. Accordingly, we will affirm the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

*Affirmed and remanded.*