# CIRCUIT COURT OF FAIRFAX COUNTY

Joseph A. Oertel

v.

Scott Ransone

March 27, 1997

Case No. (Law) 143176

BY JUDGE STANLEY P. KLEIN

This case is before Court on Plaintiff's Motion for Reconsideration of the Court's ruling and final order of October 28, 1996, finding in favor of the Defendant. The Plaintiff Joseph A. Oertel sued the Defendant Scott Ransone for damages resulting from a breach of contract for failure to complete construction of a house. In rendering its decision, this Court found that Ransone had breached the contract but that Oertel had failed to prove damages resulting therefrom. As Oertel had failed to terminate the contract as provided for in Article 15.1 of the contract between the parties (the Contract), he was not entitled to invoke the terms of that article. In addition, Oertel had failed to present sufficient evidence to establish the reasonable cost of completion of the structure according to the original contract terms. Consequently, he was not entitled to compensatory damages under Virginia common law.

Plaintiff's Motion for Reconsideration raises three issues. First, Plaintiff contends that the Court erred in placing the onus on him to terminate the contract before seeking recovery pursuant to Article 15.1 of the Contract.

Second, Plaintiff argues that the Court incorrectly assigned to him the burden of proving the reasonableness of the damages claimed. Finally, Plaintiff argues that the Court erred by not ordering Defendant to reimburse him at least for the costs of water, sewer, and building permit fees, as well as for costs expended by him to satisfy certain mechanics liens placed on the subject property as a result of Defendant's failure to pay subcontractors. After due consideration of the written and oral arguments of the parties, the Motion for Reconsideration is denied.

## I. *Termination of the Contract*

Pursuant to Article 15.1 of the Contract, Oertel asserted at trial that he is entitled to recover all sums paid by him to Ransone above and beyond what Ransone paid to his subcontractors and suppliers. In his Motion for Reconsideration, Oertel acquiesces to the Court's ruling that if Article 15.1 is controlling, Ransone is entitled to retain some funds for the work he performed on the house. Nonetheless, Oertel still claims that he is entitled to recover $20,252.60 for sums paid by him to Ransone. Motion for Reconsideration, pp. 8-9, n. 1. The evidence at trial was clear that Oertel never terminated the Contract. Oertel argues that Ransone's breach of contract obviated the need for him to terminate.

Article 15.1 of the parties' contract is entitled "Termination and Suspension" and reads as follows:

> If the Contractor fails to perform his obligations as are required by the contract documents, the Owner may terminate the contract. In that case, the Owner will be required to compensate the Contractor for the cost of the work completed and the materials ordered, but will not be obligated to pay the Contractor any other sums.

This clause clearly states that the Owner *may* terminate the contract, and *in that case*, he will be required to pay the contractor solely for the cost of work completed. The Court notes first, that by the language of the Contract, termination for Defendant's failure to perform was at the election of the Plaintiff ("Owner"). Second, the failure to perform can only be understood as a condition precedent to an election to terminate the contract. Therefore, Oertel's contention that the Defendant's breach made useless his terminating the contract is without merit. Under Virginia law, unless contrary to public policy, the contract, itself, provides the framework for legal analysis. See *McClain v. Arlington County*, 249 Va. 131, 452 S.E.2d 659 (1995).

Generally, there exists a presumption that parties have not used words needlessly. See *Winn v. Aleda Constr. Co.*, 227 Va. 304, 307, 315 S.E.2d 193 (1984). Thus, no words or provisions of a contract will be construed as meaningless if a reasonable meaning can be discerned. *Id*. Moreover, any ambiguity in the contract will be construed against Oertel, the party who drafted it. *Id*. While the Plaintiff argues that no one should be required by law to do a useless act, it is the Plaintiff who imposed the burden upon himself to terminate for failure to perform prior to invoking the terms of Article 15.1. Inasmuch as he was bound to render performance on the Contract as a whole, he was bound by this provision as well. Thus, terminating the Contract as a condition precedent to seeking recovery of sums paid out in draws cannot fairly be interpreted as a useless act.

In *American Chlorophyll, Inc. v. Schertz*, 176 Va. 362, 11 S.E.2d 625 (1940), the Virginia Supreme Court addressed the argument advanced by Oertel herein. Schertz had contracted with American Chlorophyll for royalties stemming from the disclosure of the details of a secret substance for extracting vegetable leaf matter under a formula developed by him. Schertz supplied the formula but was never paid any royalties. The contract contained a termination clause stating that no breach of contract would automatically terminate the contract and that termination required notice to the offending party. Schertz never gave notice to American Chlorophyll that it was in breach of the contract but filed an action for damages. In answer to Schertz's complaint, the defendant alleged that Schertz, in violation of his contractual duty to maintain secrecy, had knowingly caused the secret formula to be published in a magazine. Schertz argued that the defendant's breach precluded them from complaining of his non-compliance with the terms of the contract and obviated the need for his providing notice of termination. The Court rejected this argument stating:

> This is an obvious non-sequitur, for by the terms [of the contract notice and termination provision] . . . compliance or non-compliance could come only when the defendant was in default. The default was a condition precedent to the operation of [the provision], and if defendant's default should preclude its objecting to complainants non-compliance, the [provision] is a nullity. It is, by its very clear terms not a nullity, but is one of the operative terms of the contract.

*Id*. at 371 (emphasis in original). Oertel cannot avail himself of a remedy established by his contract without complying with the requirements of the specific article providing the contractual remedy. As Oertel's trial testimony

clearly established that he has always contended that Ransone abandoned the project and that Oertel never terminated the contract, Oertel's request for reconsideration on this issue is denied.

## II. *Burden of Proving Damages*

Oertel next asserts that his expenditure of some $70,000.00 above the maximum guaranteed contract price with Ransone established *prima facie* evidence of his common law or contractual damages and the Court therefore erred in ruling that he had not proven damages. The Virginia Supreme Court has consistently held that it is the plaintiff who has the burden of proving damages with reasonable certainty. See e.g. *Taylor v. Flair Prop. Assoc.*, 248 Va. 410, 415, 448 S.E.2d 413 (1994). The measure of damages for breach of a construction contract is the difference between the contract price and the amount reasonably necessary to complete the work as specified in the original contract. *Sligo Parkway Apts. v. Landscape Eng'g Co.*, 198 Va. 349, 352, 94 S.E.2d 208 (1956). While proof of the amount of damages with mathematical certainty is not necessary, the plaintiff must put forth sufficient evidence to permit an intelligent and probable estimate of damages. *Dillingham v. Hall*, 235 Va. 1, 3-4, 365 S.E.2d 738 (1988); *Hailes v. Gonzales*, 207 Va. 612, 614, 151 S.E.2d 388 (1966). This is accomplished by setting forth sufficient facts and circumstances in support of the claimed damages to allow the fact-finder to make an informed estimate. See *Gwaltney v. Reed*, 196 Va. 505, 507-08, 84 S.E.2d 501 (1954).

In his Motion for Reconsideration, Oertel makes two arguments in support of his position that he proved compensable damages at trial. First, he argues that he satisfied his burden of proof at trial by testifying that it cost him $71,688.57 over the maximum contractual price of $161,400 to finish the project. Relying on *Lochaven Co. v. Master Pools By Schertle, Inc.*, 233 Va. 537, 357 S.E.2d 534 (1987), Oertel asserts that once he so testified, the burden of proof shifted to Ransone to establish that the cost of completion did not constitute economic waste. Oertel misreads the Court's decision in *Lochaven Co.* There, the Court reaffirmed longstanding Virginia precedent that the appropriate measure of damages in a construction contract setting is "the cost to complete the contract according to its terms or the cost to repair what has been done so that the contract terms are met." *Id.* at 543. The sole exception to this general rule lies when "the cost to repair would be grossly disproportionate to the results obtained, or would involve unreasonable economic waste." *Id.* Under such circumstances, the cost of completion or repair would not constitute the appropriate measure of damages. See *Green v.*

*Burkholder*, 208 Va. 768, 771, 160 S.E.2d 765 (1968); *Kirk Reid Co. v. Fine*, 205 Va. 778, 789, 139 S.E.2d 829 (1965). Contrary to Oertel's position, *Lochaven Co.* does not support a burden shifting analysis once a lay party testifies to the cost of completing a project which may or may not be entirely consistent with the specific terms of the original contract. Nor does the decision in *Lochaven Co.* overrule the Court's requirement in *Sligo Pkwy. Apts.* that the plaintiff establish that the purported cost of completion is reasonable. At trial, Oertel declined to call either the contractor who "completed" the project or any other expert witness to testify that the house as completed was entirely consistent with the terms of the Contract. Moreover, the Court invited Oertel to locate that portion of the transcript where Oertel himself testified that the project was completed in a manner consistent with his contract with Ransone. Oertel was unable to locate any such testimony.

Consistent with Virginia precedent, this Court holds that to recover damages for breach of a construction contract where the project was subsequently completed, an owner must establish (1) that the construction was completed in a manner consistent with the terms of the underlying contract and (2) that the cost incurred to complete the project was reasonable. *Sligo Pkwy. Apts.*, 198 Va. at 352. As Oertel failed to establish either of the prongs of this test by a preponderance of the evidence at trial, his testimony of the sum he expended to finish the house is insufficient to satisfy his burden of proof of damages. (Oertel did testify that he was giving credit to Ransone for sums paid by the eventual purchaser for "extras." This does not, however, establish to the Court's satisfaction that there were not other "extras" that the purchaser received but did not pay for.)

Next, Oertel now argues that the testimony of Ransone's bookkeeper Cynthia Ransone provides the evidentiary basis to support a determination of damages. He now seeks to embrace the specific testimony that he expressly disavowed in response to the Court's direct inquiries during closing argument. The Court declines to reconsider its findings based upon Oertel's belated assertion that Mrs. Ransone's testimony has somehow obtained credibility between the date that the Court announced its original decision and the date that Oertel filed his Motion for Reconsideration. See *Brown v. Brown*, 244 Va. 319, 324, 422 S.E.2d 375 (1992). Oertel's own argument in his Motion for Reconsideration belies any claim that Ms. Ransone's testimony provides a basis for the Court to find that Oertel completed the house in a manner consistent with his contract with Ransone. "Defendant has not shown that construction (less paid-for upgrades) deviated from defendant's original architectural drawings and specifications. Nor could Defendant make such a showing. *Since Defendant abandoned the project, he would have no way of*

*knowing how the house was completed.*" Motion For Reconsideration, p. 22 (emphasis added). The Motion for Reconsideration on this ground is also denied.

### III. *Fees for Mechanics Liens and Permits*

In his Motion for Reconsideration, Plaintiff now asks the Court to award damages for expenditures made by him to satisfy mechanics liens that he claims were placed on the subject property after the Defendant allegedly failed to pay certain subcontractors. Plaintiff argues that as it was Defendant's contractual duty to supervise subcontractors, negotiate their fees, and pay them out of sums that the Plaintiff paid, Plaintiff should be compensated for the expenditures he made in an effort to satisfy these liens. Plaintiff claims that his expenditures to satisfy mechanics liens totaled $11,764.42. This amount encompasses expenditures by the Plaintiff to satisfy liens allegedly placed on the property by (1) Structural Systems, Inc., in the amount of $3,440.00; (2) Allied Plywood Corp. in the amount of $3,469.42; (3) J. P. Masonry, Ltd., in the amount of $4,500.00; and, (4) Consulting Engineers in the amount of $355.00.

Plaintiff further argues that Ransone was contractually obligated to pay the fees necessary to secure Town of Vienna water and sewer connections. Plaintiff alleges that Defendant took a draw to effectuate this payment, wrote the check, and then subsequently placed a stop-payment on it. Plaintiff states that he is entitled to compensation in the amount of $8,013.00, which represents his expenditure for this water and sewer hook-up.

After reviewing the record, the Court finds that the Plaintiff is not entitled to compensation from Defendant for mechanics liens or for the Town of Vienna water and sewer fees. During the course of the trial, Plaintiff attempted to introduce into evidence documentation supporting his claim that he paid the above listed amounts in satisfaction of the purported liens placed by Structural Systems, Inc., Allied Plywood Corp., and J. P. Masonry, Ltd. These documents were objected to by opposing counsel on the grounds of hearsay and the objections were sustained. Specifically, the Court found that the Plaintiff had failed to lay a sufficient foundation for the introduction of these documents. See Tr., vol. 1, at 59. As to the purported lien filed by Consulting Engineers, the Plaintiff never attempted to introduce underlying documentation that would support his contention that he paid $355.00 in satisfaction for a lien filed. The only evidence received by the Court with regard to any of these alleged liens were canceled checks written by Oertel to these subcontractors in the amounts listed above. This evidence was received

for the limited purpose of demonstrating that Mr. Oertel wrote these checks in the stated amounts. See Tr., vol. 1, at 115. Oertel never established by admissible evidence that these checks in fact were necessary to satisfy liens properly placed on the property by subcontractors who were not paid by Ransone. As such, Oertel cannot recover for these payments.

With regard to the Town of Vienna water and sewer hook-up, the Plaintiff's claim for damages suffers from the same infirmity as that associated with the purported mechanics liens. Plaintiff attempted to introduce into evidence a letter from the Town of Vienna informing him that the Defendant had placed a stop-payment on his check written to pay for the water and sewer hook-up in the amount of $8,013.00. Opposing counsel objected to the introduction of this letter as hearsay and that objection was sustained. See Tr., vol. 1, at 64. The Plaintiff's canceled check # 5731 in the amount of $8,013.00 payable to the Town of Vienna was received into evidence. However, Plaintiff never established by a preponderance of the evidence that the sum paid to the Town of Vienna was to obtain the county water and sewer connection fee that Ransone was required to pay out of the first draw. No evidence was admitted at trial to support Oertel's claim that Ransone had placed a stop-payment on a check to the Town to obtain the necessary connections. Consequently, Oertel is not entitled to recover for this item.

## IV. *Conclusion*

After full consideration of all matters raised in Oertel's Motion for Reconsideration, the evidence received at trial, and the applicable Virginia authorities, the Court finds that Oertel is not entitled to any of the relief requested in his motion. Accordingly, Mr. Oertel's Motion for Reconsideration is denied in its entirety and his exception is noted for each of the reasons set forth in his memoranda.

## *Final Order*

This Motion is before the Court on Plaintiff's Motion for Reconsideration, and it appearing to the Court that the motion should be denied for the reasons set forth in the Court's letter opinion dated March 27, 1997, it is therefore ordered that Plaintiff's Motion for Reconsideration be and is hereby denied and it is further ordered that this Court's order entered November 18, 1996, staying the Final Order of October 28, 1996, be and is hereby vacated effective this date.