## CIRCUIT COURT OF NELSON COUNTY

Louis Calderone
and Linda Calderone

v.

TAC Construction, L.L.C.

November 14, 2008

Case No. CL070003335

By Judge J. Michael Gamble

I am writing this letter to furnish the court's decision in this case. In this regard, I grant to the plaintiffs a judgment against the defendant in the amount of $49,782.

This is an action to recover damages for the failure to construct a home located at the Wintergreen Resort in accordance with the construction contract, specifications, written warranties, and implied warranties. The plaintiffs and the defendant entered into a written contract with specifications attached in late August 2003. This was a fixed price contract for $446,000. The contract required that the work be substantially complete within ten months of September 22, 2003. Time was made of the essence in the contract. In September 2003, the parties entered into an addendum requiring that the work start within three weeks after the deposit. Also, in September 2003, the parties entered into an additional addendum with further specifications and requirements. In December 2003, the parties entered into an additional contract for the defendant to construct a "bonus room" in the unfinished area above the garage. The price for the bonus room was fixed at $11,047.

In addition to the written contracts, there were various oral change orders. These change orders were not reduced to writing.

The evidence at trial established that the defendant substantially failed to meet the standards of workmanship for a residential building contractor in many aspects of the construction of this house. A substantial portion of this defective workmanship was done by unlicensed subcontractors who did not have sufficient expertise to properly complete their work. The failure of the defendant to meet the required standards of workmanship was established through the expert testimony of Richard P. Mooring, a professional engineer and residential home inspector; David Roberts, a roofing contractor, with thirty years of experience; Steve Crandall, a general contractor for thirty years, who had constructed over 400 homes in the Wintergreen Resort; and James Smith, a heating and air conditioning contractor, with thirty-six years of experience.

The Supreme Court of Virginia has held that, in building and construction contracts, it is implied that the building be erected in a "reasonably good and workmanlike manner and, when completed, shall be reasonably fit for the intended purpose." *Mann v. Clowser*, 190 Va. 887, 901, 59 S.E.2d 78 (1950). See also *American Surety Co. v. Zoby*, 204 Va. 325, 329, 130 S.E.2d 587 (1963); *Willner v. Woodward*, 201 Va. 104, 108, 109 S.E.2d 132 (1959). Further, when a building contractor has breached his contract, the damages are based upon the reasonable cost of completing or correcting the work if the defect is remediable. *Mann*, 190 Va. at 904. See also *Green v. Burkholder*, 208 Va. 768, 771, 160 S.E.2d 765 (1968).

There is nothing in the written contracts between the parties that changes the implied warranty of workmanship for a building contractor. The statute of limitations for bringing this action would be five years under Va. Code § 8.01-246(2) because it is based upon a written contract between the parties. Paragraph F of the original contract requires the contractor to correct any work found to be defective or nonconforming within one year of the date of substantial completion. It should be noted that, on January 25, 2005, David Gregory, the principal officer of the defendant, and Linda Calderone entered into an agreement affirming the warranty set forth in the contract. See Defendant's Exhibit # 5. Accordingly, the court construes these provisions as requiring the defendant to correct any workmanship problems occurring within one year after substantial completion.

I will discuss the items of damages awarded. The specifications to the contract clearly required that Tyvek or an equal vapor retardant be placed over the entire exterior sheaving. The testimony of Steve Crandall established that this is an element of proper workmanship in the building trade in Nelson County. Additionally, Exhibit 29 provides that a weather-resistive barrier is required to prevent water infiltration. The fact that the building code did not require the vapor barrier is of no consequence. The vapor barrier was required by the written contract and the workmanship standards of the trade. Steve Crandall testified that the cost to replace the hardiboard siding and install the Tyvek is $45,296. Because the plaintiffs

pleaded for a recovery of $28,700 in their complaint, I have awarded $28,700.

I have awarded $19,400 for the new roof. This is the cost that was incurred for the firm of David Roberts to replace the defective roof. Under the evidence, the roof installed by the contractor was clearly defective. It had to be replaced because any work required to correct the original roof would have voided the manufacturer's warranty. Even the defendant, through its primary officer, David Gregory acquiesced in the replacement of the roof.

The defendant maintains that the roof could have been fixed for $2,000. This is unsupported by the evidence. Further, the defendant maintains that the parties compromised on the roof by agreeing that it would be replaced by Dave Roberts for the sum of $14,900. See Defendant's Exhibit # 6.

I cannot find that there was a settlement agreement defined by Exhibit # 6. There is writing under the initial proposal that does not appear to be accepted by all of the parties. Thus, there are offers and counter-offers that are not clearly accepted. Further, the actions of the parties establish that there was no objection to the firm of David Roberts replacing the roof. This is demonstrated by the letter of May 22, 2005, from David Gregory to Mr. and Mrs. Calderone contained within the packet of documents under Plaintiffs' Exhibit # 27. In that letter, Mr. Gregory acknowledges that the plaintiffs were handling the roof and the brickwork.

The Supreme Court has held that the essential elements of a valid contractual settlement are that there must be a complete agreement, including acceptance of an offer, as well as consideration. Further, the court noted that the ultimate resolution on whether there has been a binding settlement involves a determination of the parties' intention, "*as objectively manifested.*" *Snyder-Falkinham v. Stockburger*, 249 Va. 376, 381, 457 S.E.2d 36 (1995). In the instant case, the court cannot find that Defendant's Exhibit 5 is an acceptance of an offer for full settlement. Further, the objective manifestation of the subsequent actions of the parties is that the plaintiffs would determine the contractor for the roof.

I have awarded $4,450 for the heating and air conditioning corrective work. The defendant maintains that it was not notified about the problems with the heating and air conditioning within one year of substantial completion. As noted above, the court construes the contract to require that the problem exist within the one year period, not that there be notification within the one year period. Based upon the testimony of James Smith, the heating and air conditioning expert of the plaintiffs, the evidence established that the workmanship was defective at the time it was installed. Thus, the problem existed within one year of substantial completion of the contract.

I have awarded $3,588 for the work of Richard Cline and $350 for the work of Jeff Goff. This work was for completion of the various punch

list items that were either not completed or not performed according to adequate workmanship standards. Although neither Mr. Cline nor Mr. Goff testified, this is a reasonable amount for the number of workmanship items and completion items that required correction or completion.

I awarded the sum of $400 for re-parging the chimney. The evidence was that the parging was deteriorating on the chimney. The amount paid was reasonable to correct this work.

I have awarded damages for the shutters, door hardware, window grids, smoke detectors, B. board, and limestone steps. These items were uncontested. Further, these items were required under the contract.

I awarded $852 for the work of Robert Small. This was required to perform miscellaneous items pursuant to the contract that were not done by the contractor.

I have awarded $1,035 for the bonus room corrections. I find that the workmanship for the bonus room did not meet the standards of the construction trade. The cost to correct this work was reasonable.

The total damage is $66,782. There is a credit against these damages for the $17,000 that was withheld by the plaintiffs. Accordingly, the net judgment is for $49,782.

I have not granted damages for the rental income. These are not direct damages because they do not arise naturally and ordinarily from a breach of contract. *Roanoke Hospital Assoc. v. Doyle & Russell, Inc.*, 215 Va. 796, 801, 214 S.E.2d 155 (1975). Thus, in order to be recoverable, these damages must be consequential damages. Consequential damages are damages that arise from special circumstances actually foreseen or reasonably foreseeable by the parties when they made the contract. *Virginia Tech. v. Interactive Return Service*, 267 Va. 642, 654, 595 S.E.2d 1 (2004). I cannot find that the evidence has established by a preponderance of the evidence that either rental income was contemplated by the parties when they entered into their contract or reasonably foreseeable from that contract.

I did not grant the $13,200 incurred for painting and nail hole caulking. While this was an expense for defective workmanship, I find that it would be economically wasteful to grant this cost and further grant damage for the corrective work to the hardiboard and Tyvek by Steve Crandall. The work by Steve Crandall would essentially encompass doing the same work that was previously done by Fraizer in painting and nail hole caulking. As noted above, the Supreme Court of Virginia has held that a plaintiff may recover for the costs of completing or correcting defective workmanship. However, this cost may be recovered if it does not involve unreasonable economic waste. *Mann*, 190 Va. at 904; *Green*, 208 Va. at 771.

It would be economically wasteful to require that the defendant pay for the same work twice. It is incumbent upon the plaintiffs to find all the defective workmanship in an area where work is performed prior to

undertaking to correct the work. Thus, I will not allow these duplicative damages.

I have also declined to grant damages in the sum of $5,985 for the final grading bill of Saunders. The contract did not adequately define the final grading requirements. Further, Saunders has not testified as to exactly what was encompassed in the work that was performed. Thus, the court is unable to determine the requirements for final grading or determine whether the work performed by Saunders met these requirements.

The $102 bill from Brian Kidd was not granted because I could not determine whether it addressed any contractual workmanship issues.

The plaintiffs sought to introduce into evidence the report of findings by the Board of Contractors dated August 16, 2005. I decline to admit this document into evidence. I have made this decision because the standards of an administrative agency are not the same standards as the court in a common law civil action. Accordingly, the findings by the Board of Contractors are not relevant to this case.

The counterclaim of the defendant is denied. I have setoff against the plaintiffs' damages the $17,000 that was retained. There has not been sufficient proof by the defendant that it is due the other damages sought in the counterclaim.